**Jaime Gonzalez BATH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–94–460–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 22, 1997.

Rehearing Overruled Aug. 14, 1997.

David L. Botsford, Austin, for Appellant.

Jose M. Rubio, District Attorney, Monica Z. Notzon, Asst. District Attorney, Laredo, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ.

**14**

## OPINION

YANEZ, Justice.

This is an appeal of a capital murder conviction by a jury. TEX. PENAL CODE ANN. § 19.03(a)(7)(A) (Vernon 1994). The jury sentenced appellant to life in the Institutional Division of the Texas Department of Criminal Justice. By twenty-two points of error, appellant challenges the legal and factual sufficiency of the evidence, the denial of a new trial, the *sua sponte* transfer of venue and constitutionality of that venue transfer statute, partial *voir dire* of the jury in his absence, and the denial of a requested sequestration order and requested alibi and identification instructions. We affirm.

Between 4:30 p.m. and 5:00 p.m. on July 29, 1992, a man carrying an AK–47 rifle exited a Ford Crown Victoria that stood amid other cars waiting for the traffic lamp signal to change at the Mann Street intersection of San Dario Avenue in Laredo, Texas. On foot, the gunman approached the driver's side of a Mercury Marquis immediately ahead of him and opened fire on the occupants. The gunman came around the Marquis and shot the passenger who had managed to get out of the back seat of the car but was lying face down on the street. The gunman then got back into the Crown Victoria. The Crown Victoria and a red Camaro were observed fleeing the scene one after the other. All three occupants of the Marquis were killed. At about 5:00 p.m., a private investigator observed a red Camaro approach a toll booth at a Laredo international bridge at a high rate of speed, break through a wooden barrier, and cross into Mexico. Three persons who were in vehicles at the intersection where the shooting occurred testified as eye-witnesses to the shooting and identified appellant, Jaime Gonzalez Bath, as the gunman. The investigator who observed the Camaro breaking through the barrier at the international bridge identified appellant as the driver.

## SUFFICIENCY OF THE EVIDENCE

By his first four points of error, appellant challenges both the legal and factual sufficiency of the evidence for two aspects of the verdict—appellant as perpetrator of the offense and the identities of the victims.

### Appellant as Perpetrator

■ By points one and two, appellant challenges the legal and factual sufficiency of the evidence that appellant was the gunman. Appellant maintains that identification of him as the perpetrator of the offense is based primarily on the testimony of two "perjurers," and that other witnesses either were unable to identify him as the gunman or affirmatively stated that the gunman was not him. Noting that the jury has the authority to determine the credibility of witnesses, the State cites the testimony of the three eye-witnesses at trial, each of whom indicated that he or she had a close look at the person who fired the automatic weapon and that appellant was that person.

The standard of review for challenges to the legal sufficiency of the evidence in criminal cases is that set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex.Crim.App.1996). The *Jackson* standard inquires whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The verdict may be set aside pursuant to a factual sufficiency challenge only if, after viewing all the evidence without the prism of "in the light most favorable to the prosecution," it is contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 129. This standard has been extended to capital cases. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim.App.1996). The jury is the sole trier of fact and may judge the credibility of witnesses, reconcile conflict in testimony, and accept or reject any evidence presented by either side to the case. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991); *Garza v. State*, 937 S.W.2d 569, 570 (Tex. App.—San Antonio 1996, pet. ref'd). The reviewing court may not substitute its own

judgment for that of the jury's. *Jones*, 944 S.W.2d at 647; *Clewis*, 922 S.W.2d at 133.

Three eye-witnesses to the murders testified for the State. Juan Adolfo Ramos, a deputy sheriff with Webb County, and his wife, Norma Zavala, a Webb County probation officer, were off-duty and traveling north on San Dario Avenue when they were cut off by a red Camaro apparently attempting to get ahead of cars in its way. Ramos and Zavala arrived at the Mann Street intersection behind and to the right of the Crown Victoria that the assailant exited on his way to shooting the victims. Both testified that they had an unobstructed view of the gunman and identified appellant as that gunman. Ramos, in fact, testified that he knew of appellant prior to the shooting and thereby recognized him as the offense unfolded. He also testified that he saw the Crown Victoria and the red Camaro flee the scene of the shooting together. Jesus Guerra, Jr. testified that his truck was on San Dario Avenue at the Mann Street intersection and next to the victims' car when the shooting occurred. He testified that he had an unobstructed view of the gunman and identified appellant as the gunman. Efrain J. Laurel, a private investigator who was near international bridge number two in Laredo on the day of the shooting, testified that at about 5:00 p.m. he observed appellant drive a red Camaro through a wooden barrier at the bridge into Mexico. We hold that viewed in the light most favorable to the prosecution, a rational juror could have found beyond a reasonable doubt that appellant committed the murders.[1] Point of error one is overruled.

■ In regard to factual sufficiency, appellant points to many grounds for questioning the credibility of the State's witnesses. Ramos, for example, testified that he and his wife went directly to the police station after the shooting, but for a stop at a convenience store. It was later adduced, however, that before entering the police station, they drove by motels looking for appellant and stopped at a pawn shop to purchase a sawed-off shotgun. Police investigator Jorge A. Almazan testified that when he arrived at the scene of the shooting, Ramos exclaimed that Jaime Gonzalez Bath was the gunman. According to Zavala, however, while at the scene of the shooting, Ramos was unable to recollect the name of the gunman. Some of the State's witnesses saw the red Camaro strike victim Elpidio Pruneda after he exited the back seat of the Marquis and before he was shot in the back while on the street. One of the State's witnesses at the scene, John David Reyna, stated that he never saw a red Camaro. There is conflicting testimony as to where Laurel was standing when he observed the Camaro at the international bridge and perhaps as to what he was able to see. There are disparate accounts as to which automobiles were at the scene, the physical appearance and clothing of the gunman, and his actions during the shooting. Eli Vasquez testified that he had a clear view of appellant from the showroom of the car dealership where he worked and that appellant definitely was not the gunman. Juan T. Alfaro, who was at the carwash adjacent to the scene of the offense when it occurred, testified that appellant was not the gunman. One of Vasquez's co-workers at the car dealership was unable to identify appellant as the gunman. Reyna got a close view of appellant only from the backside and could not identify appellant as the gunman, although he also could not exclude him as the gunman.

Matters of witness credibility and conflicts within the evidence, nevertheless, are matters exclusively within the purview of the jury to resolve, as trier of fact. *Chambers*, 805 S.W.2d at 461. *Cf. Driggers v. State*,

---

1. Our legal sufficiency analysis is aided by the following hypothetical relied upon in *Clewis* for explaining the difference between legal and factual sufficiency analyzes.

  The prosecution's sole witness, a paid informant, testifies that he saw the defendant commit a crime. Twenty nuns testify that the defendant was with them at the time, far from the scene of the crime. Twenty more nuns testify that they saw the informant commit the crime. If the defendant is convicted, he has no remedy under Jackson because the informant's testimony, however incredible, is legally sufficient evidence.

  *Clewis*, 922 S.W.2d at 133 n. 12 (borrowing the hypothetical used by the Fifth Court of Appeals decision in *Clewis v. State*, 876 S.W.2d 428 (Tex. App.—Dallas 1994), *rev'd*, 922 S.W.2d 126 (Tex. Crim.App.1996)).

940 S.W.2d 699, 704 (Tex.App.—Texarkana 1996, no pet. h.) (deferring to jury where to "two distinctly different versions of events" were adduced, in consideration of the "jury's job to judge the credibility of the witnesses"); *Loserth v. State,* 931 S.W.2d 322, 326 (Tex. App.—San Antonio 1996, pet. granted) (deferring to authority of jury to resolve conflict in testimony over whether the accused could have jumped several stories off a building, been able to go anywhere fast, and participate in physical activities without signs of being hurt). In consideration of the direct evidence of appellant's guilt, irrespective of the evidentiary conflicts on record, we cannot hold that the verdict is contrary to the great weight of the evidence. Point of error two is overruled.

## Identities of the Victims

■ By points of error three and four, appellant challenges the legal and factual sufficiency of the evidence for the identities of the victims. Appellant argues that the State failed to prove the actual identities of the persons killed, irrespective of the identifications found on the victims' bodies. Appellant points to discrepancies between names on driver's licenses or identification cards and other evidence as to the names of the victims. The State maintains that the testimonial and documentary evidence presented regarding the identities of the victims was both legally and factually sufficient.

Sufficiency of the evidence is measured against the indictment as incorporated into the jury charge. *Fisher v. State,* 887 S.W.2d 49, 55 (Tex.Crim.App.1994) (citing *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App. 1982) (opinion on State's second motion for reh'g), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984)); *Meador v. State,* 941 S.W.2d 156, 158–59 (Tex.App.— Corpus Christi 1996, pet. ref'd).

The jury charge tracked the indictment in charging that appellant, during the same criminal transaction, murdered more than one person, to wit: Elizabeth E. Montemayor, Jose Ramon Ramirez, and Elpidio Alfredo Pruneda. The identity of the man whose body was found on the street was determined by a Texas driver's license found on the body. The photograph on the license matched the body on which it was found. The license indicated that person's name was Elpidio Alfredo Pruneda. Doyle Holdridge, a Texas Ranger with the Texas Department of Public Safety, testified that on the basis of public records, the documentation submitted with Pruneda's application for this driver's license was a Texas identification card.

A Texas identification card was found on the body of the woman in the Marquis. The photograph on the identification card matched the body. The card identified her as Elizabeth E. Montemayor. Holdridge testified that the application for this identification card was supported by a Hidalgo County birth certificate for Elizabeth Montemayor, although counsel for appellant demonstrated that the death certificate for Montemayor indicated she was born in Mexico.

A Mexican driver's license was found on the body of the driver of the car. The photograph matched the body. The license indicated the name Robert Ramon Villarreal Hernandez. The police investigator in this case, Jorge Almanzan, testified that several persons identified this body, including the Laredo police chief, the county morgue, the chief investigator for the district attorney's office, a police sergeant, and the deceased's nephew. Almanzan testified that this person used two or three aliases, one of which was Tutu Jimenez. The name on the death certificate for this body was Ramon Jimenez. Oscar Hale, an investigator for the prosecuting district attorney's office, testified that this person was known to him as Jose Ramon Jimenez.

In consideration of the identification card for Elizabeth E. Montemayor, the discrepancy as to her place of birth, without more, bears little on the jury's prerogative to determine rationally that the body on whom it was found was, in fact, that of Montemayor. Finding virtually no other evidence that any of the victims' identities were other than what the State demonstrated them to be, we hold that the evidence was both legally and factually sufficient for the identities of the victims as alleged by the State. Points of error three and four are overruled.

## DENIAL OF THE MOTION
## FOR NEW TRIAL

By points of error five through nine, appellant argues that the trial court abused its discretion in failing to grant a new trial despite evidence of jury misconduct and improper *voir dire* of the jury.

### Jury Misconduct

■ By his fifth point, appellant charges the trial court abused its discretion in overruling his motion for a new trial on the ground of jury misconduct by reliance on evidence not adduced at trial. Appellant points to the testimony by juror Maria del Carmen Zamora at the hearing on the motion for new trial, in which she stated that she heard detrimental things said about appellant during jury deliberations which were not evidence and that she relied on evidence not adduced at trial in reaching her vote of guilty. The State acknowledges that if the hearing on the motion for a new trial transpired as depicted by appellant, a new trial must be granted. The State maintains, however, that the evidence of jury misconduct upon which appellant relies was either controverted or misconstrued by appellant.

Under the Fourteenth Amendment to the United States Constitution, trial by jury in a criminal case necessarily implies that the evidence against a defendant shall come from the witness stand in a public courtroom, where there is full judicial protection of the accused's right of confrontation, cross-examination, and counsel. *Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1965). Jury misconduct implicates both State and federal constitutional guarantees. *Chew v. State*, 804 S.W.2d 633, 638 (Tex.App.—San Antonio 1991, pet. ref'd). A motion for new trial is the proper course to be taken in preserving alleged jury misconduct for appeal. *Trout v. State*, 702 S.W.2d 618, 620 (Tex.Crim.App.1985); *Cuellar v. State*, 943 S.W.2d 487, 490–91 (Tex.App.— Corpus Christi 1996, no pet. h.). Under the Texas Rules of Appellate Procedure, a new trial shall be granted an accused if, after retiring to deliberate, the jury received other evidence or engaged in such misconduct that the accused did not receive a fair and impar-

tial trial. Tex.R.App.P. 30(b)(7) & (8); *Reyna v. State*, 846 S.W.2d 498, 501 (Tex.App.— Corpus Christi 1993, no pet.); *see also Von January v. State*, 576 S.W.2d 43, 45 (Tex. Crim.App.1979). In order to compel a new trial, the other evidence relied upon must have been (1) received by the jury and (2) detrimental to the defendant. *Martinez v. State*, 846 S.W.2d 348, 350 (Tex.App.—Corpus Christi 1992, pet. ref'd). The trial judge is the trier of fact at the hearing on a motion for new trial and his findings will not be disturbed absent a showing that he abused his discretion. *Tollett v. State*, 799 S.W.2d 256, 259 (Tex.Crim.App.1990); *Jones v. State*, 596 S.W.2d 134, 138 (Tex.Crim.App.1980); *Reyna*, 846 S.W.2d at 501. No abuse of discretion exists where there is conflicting evidence and the motion for new trial is overruled. *Tollett*, 799 S.W.2d at 259; *Martinez*, 846 S.W.2d at 351.

At the hearing on the motion for new trial, Zamora testified that during deliberations Bill Gandy said he knew more than she did about appellant and that appellant was "bad." She stated that during deliberations she heard another juror comment that appellant was involved in drugs. Appellant also notes that juror Richard Montemayor testified that he heard somebody say to Zamora words to the effect of "I know things that you don't know about him." Zamora, who initially voted not guilty, also testified that while she still had a reasonable doubt as to appellant's guilt, juror Celia Thompson had a private conversation with her, during which Thompson assured her that appellant had killed others before. Zamora testified that on the basis of this information, she decided to vote guilty. Zamora maintained that she had a reasonable doubt about the guilt of appellant after the verdict was read; that she cried out of guilt as the verdict was read; and that she was not fair as a juror. At the hearing of the motion for new trial, Bill Fleming and Esmerelda Castillo corroborated that Zamora and Thompson talked with each other during deliberations.

Also a matter of record, however, is testimony conflicting with Zamora's claims. Bill Gandy testified that he never observed Zamora and Thompson having a private conver-

sation. He also denied that he told any juror he knew more about appellant than they did. Fleming also testified that he never heard Gandy say such a thing. Celia Thompson testified that she never heard Gandy mention any information not received at trial, and she denied that she ever told Zamora appellant had killed others. Castillo testified that she heard Gandy say he knew more about appellant but also that he could not tell the other jurors. Montemayor testified that he heard Gandy say something to the effect of "You don't know what I know about him," and that he heard somebody say they believed appellant was a drug dealer. Only Zamora testified that extraneous evidence served as a basis for her final vote on the verdict. Montemayor and Castillo testified that they originally voted not guilty but relied only on the evidence adduced at trial in reaching their final vote of guilty. Thompson testified that Zamora did not voice complaints about the final vote on appellant's guilt, and Zamora admitted that she did not mention to the jury foreman her conversations with Gandy and Thompson and that she did not say anything after being polled by the judge as to her verdict. Because it is within the discretion of the judge to determine the credibility of witnesses when there is conflicting evidence in relation to alleged jury misconduct, we hold that the trial court did not abuse its discretion in denying appellant's motion for new trial on the basis of Zamora's testimony.

### Voir Dire of Jury

■ By his sixth point of error, appellant claims the trial court erred in sustaining the State's objection to questions posed to juror Montemayor at the hearing on the motion for new trial. Appellant bases his claim on a discrepancy between what Montemayor claimed during *voir dire* to know about appellant and what he allegedly said to two attorneys later, as reported in an affidavit by counsel for appellant submitted with the motion for new trial. By his seventh and eighth points, appellant argues that the information that Montemayor concealed during *voir dire*

denied him the opportunity to exercise his peremptory challenges intelligently. The State maintains that Montemayor's explanation at *voir dire* of what he knew about appellant was adequate.

The test for admission of juror testimony at a hearing on motion for new trial is whether the matter sought to be elicited is deemed by the trial court relevant to the validity of the verdict. *Buentello v. State,* 826 S.W.2d 610, 614 (Tex.Crim.App.1992). The judge's determination of whether testimony sought to be elicited at a hearing on a motion for new trial should not be disturbed absent an abuse of discretion. *Buentello,* 826 S.W.2d at 613. Ordinarily, material information not disclosed by a juror at *voir dire* is considered not to have been withheld unless defense counsel asked questions designed to elicit the information during *voir dire. Armstrong v. State,* 897 S.W.2d 361, 363–64 (Tex.Crim.App. 1995) (citing *Jones,* 596 S.W.2d at 137); *Cuellar,* 943 S.W.2d at 490–91.

The record reflects that Montemayor was not completely candid at *voir dire.* Before the attorneys performed their examinations of Montemayor, the court inquired whether he knew anything about appellant. Montemayor answered, "No, sir. I sure don't." He then indicated that he heard about the case just on "the first day it came out in the news." [2] The prosecution inquired into Montemayor's recollection of the news media account of the crime, and, in response, Montemayor indicated that he understood that the news report was not evidence and that he believed he could set aside what he heard from it. Counsel for appellant delved no further into what Montemayor heard about the case or appellant prior to being summoned, although he inquired at the end of his examination whether Montemayor could give appellant a fair trial and whether he could think of any question that should have been asked. Montemayor answered "yes" and "no" respectively. At the motion for a new trial hearing, however, Montemayor admitted that before he was summoned for jury service, he heard from unidentified

---

**2.** He stated that he had not formed a conclusion as to guilt or innocence, and that he could set aside whatever he had heard and decide on ap-

pellant's guilt or innocence solely on the basis of what he would hear at trial.

individuals "things" about appellant "more or less about his family." Precisely what Montemayor heard was not elicited, because the trial court sustained the State's objection to further examination on this point, on the ground that what Montemayor knew about appellant was a matter examined at *voir dire,* following which both sides decided to accept him for jury service. The State's argument thus was specious, as Montemayor did not admit at *voir dire* that he heard things about appellant or his family in general from any source other than one news report. Nothing about this matter was adduced at *voir dire.* We hold that the trial court erred in sustaining the objection.

■ The trial court's error in sustaining the objection, nevertheless, was harmless, because of what the record reflects as to the selection of Montemayor by counsel for appellant and Montemayor's conduct as a juror. First, counsel for appellant did not question Montemayor on the matter of his knowledge, or lack of knowledge, of appellant. It thus is the lack of diligence on the part of appellant's counsel that may be responsible for a peremptory challenge not exercised. Second, despite this lack of questioning, counsel for appellant zealously accepted Montemayor as a juror. At the conclusion of the examination of Montemayor, counsel for appellant followed the State's acceptance of Montemayor with the comment: "Your Honor, with even more vigor than the State, the defendant accepts Mr. Montemayor." Third, at the hearing on the motion for new trial, Montemayor testified that he based his decision only on what he heard at trial. And fourth, at deliberations, Montemayor initially voted "not guilty." Points of error six, seven, and eight are overruled.

### Cumulative Effect

By his ninth point, appellant suggests that the cumulative nature of the errors alleged in the previous four points of error require a holding that the trial court abused its discretion in overruling his motion for a new trial. We overruled the previous three points of error, so nothing cumulative arises under this point. Point of error nine is overruled.

## CHALLENGE TO THE CHANGE OF VENUE

By points of error ten through fourteen, appellant challenges the change in venue of his trial on several grounds: the "vicinage" provision of the Sixth Amendment; the factual deficiency of the venue transfer order in relation to the due process and due course of law requirements; and the express requirements of the venue transfer statute.

### Sixth Amendment Vicinage

■ By point of error ten, appellant claims that the transfer of his trial from Webb to Nueces County, rather than to a county in an adjoining judicial district, violated the "vicinage" provision of the Sixth Amendment to the United States Constitution. Appellant argues that under this provision, the criminally accused must be tried in the legal district in which the offense was committed. Appellant argues that this vicinage stipulation is applicable to the states by incorporation into the Fourteenth Amendment.

The "vicinage" provision of the Sixth Amendment stipulates that in all criminal prosecutions, the accused shall be tried by an impartial jury of the State "and district wherein the crime shall have been committed, which district shall have been previously ascertained by law...." U. S CONST., amend. VI. Neither federal nor state authorities, however, currently require application of this clause to state prosecutions. *See Cook v. Morrill,* 783 F.2d 593, 595 (5th Cir. 1986); *Martin v. Beto,* 397 F.2d 741, 748 (5th Cir.1968), *cert. denied,* 394 U.S. 906, 89 S.Ct. 1008, 22 L.Ed.2d 216 (1969); *State v. Paiz,* 817 S.W.2d 84, 85 (Tex.Crim.App.1991); *but see Paiz,* 817 S.W.2d at 86 (assuming, *arguendo,* that it did apply). We therefore hold that no error in relation to the vicinage provision of the Sixth Amendment was committed in the transfer of appellant's case from Webb to Nueces County. Point of error ten is overruled.

### Due Process and the Transfer Order

■ By point of error eleven, appellant argues that Article 31.01 of the Texas Code

of Criminal Procedure, by which the trial judge transferred this case to another venue, violates the Due Process Clause of the Fourteenth Amendment. By point of error twelve, appellant argues that the statute violates the Due Course of Law provision in Article I, Section 19 of the Texas Constitution. The statute violates the right of notice and to be heard guaranteed by the Due Process Clause, appellant argues, because it allows parties to be heard only after the trial court announces its grounds for changing venue. Appellant also argues this right is emasculated by prevailing Article 31.01 doctrine. The Due Course of Law provision of the Texas Constitution, appellant adds, may be the basis for even greater protection to appellant than the Fourteenth Amendment. The State takes recourse in prevailing state doctrine on the matter.

Article 31.01 reads as follows:

Whenever in any case of felony or misdemeanor punishable by confinement, the judge presiding shall be satisfied that a trial, alike fair and impartial to the accused and to the State, cannot, from any cause, be had in the county in which the case is pending, he may, upon his own motion, after due notice to accused and the State, and after hearing evidence thereon, order a change of venue to any county in the judicial district in which such county is located or in an adjoining district, stating in his order the grounds for such change of venue. The judge, upon his own motion, after ten days notice to the parties or their counsel, may order a change of venue to any county beyond an adjoining district; provided, however, an order changing venue to a county beyond an adjoining district shall be grounds for reversal if, upon timely contest by the defendant, the record of the contest affirmatively shows that any county in his own and the adjoining district is not subject to the same conditions which required the transfer.

TEX.CODE CRIM.PROC.ANN. art. 31.01 (Vernon 1989). When faced with a constitutional challenge to a statute, we begin our analysis

with a presumption of statutory validity, and the burden is on the challenger to establish that the statute is unconstitutional. *Garay v. State*, 940 S.W.2d 211, 215 (Tex.App.—Houston [1st Dist.] 1997, no pet. h.) (citing *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex.1974)). The statute will be liberally construed in favor of constitutionality. *Id.*

Among the constituent elements of the federal "due process" guarantee is notice of prospective deprivation of liberty and the opportunity to be heard in a meaningful time and place on the matter. *Smith v. State*, 912 S.W.2d 268, 270 (Tex.App.—San Antonio 1995, no pet.) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). The Texas Supreme Court has held that the Due Course of Law clause in the Texas Constitution is slightly different from the Due Process clause in the Fourteenth Amendment, but that the two clauses are similar and "without meaningful distinction." *University of Tex. Medical Sch. v. Than*, 901 S.W.2d 926, 929 (Tex.1995). Nevertheless, the Texas Constitution may provide greater protection for individual rights than the United States Constitution. *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986); *Graham v. Texas Bd. Of Pardons & Paroles*, 913 S.W.2d 745, 750 (Tex.App.— Austin 1996, writ dism'd w.o.j.). However, absent convincing argument and authority, the Texas Due Course of Law provision has been held to provide no greater protection than the United States Constitution. *E.g., Flores v. State*, 904 S.W.2d 129, 131 (Tex. Crim.App.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).

The same Texas Constitution upon which appellant would rely as authority for the claim that Article 31.01 is void also vests the authority to change venue in the courts. TEX. CONST. art. III, § 45.[3] Article 31.01 has been held constitutional. *Allen v. State*, 488 S.W.2d 460, 461 (Tex.Crim.App.1972) (relying on *Ex parte Cox*, 12 Tex.Crim. 665 (1882), *Cox v. State*, 8 Tex.Crim. 254 (1880) and *Martin*, 397 F.2d at 741). In a procedural challenge to the article, the Court of Crimi-

---

**3.** Article III, § 45, provides: "The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the Legislature shall pass laws for that purpose."

nal Appeals held that the trial court need not support its motion to transfer venue with evidence. *Cook v. State,* 667 S.W.2d 520, 522 (Tex.Crim.App.1984). The rationale for this holding was that a court would not issue a show cause order but for its own notice of facts that, in its judgment, would preclude a fair and impartial trial. *Id.* at 522 n. 2 (citing *Cox,* 8 Tex.Crim. at 283). We find the order to show cause sufficiently alerts both parties to that jural determination, and that the hearing presents the parties an opportunity to rebut it. We therefore hold that the statute does not violate either the Due Process Clause of the Fourteenth Amendment or the Due Course of Law provision of the Texas Constitution. Points of error eleven and twelve are overruled.

■ Point of error thirteen is a contingency. Appellant argues that if we hold that Article 31.01 requires the court to present evidence in support of its change of venue motion, then the trial court committed reversible error by presenting no evidence in support of its order. We held that no evidence is required in support of the order. Point of error thirteen is overruled.

### The Terms of the Venue Transfer Statute

■ By point of error fourteen, appellant claims that the trial court failed to respect the express terms of Article 31.01 as to the conditions under which venue may be transferred. Appellant argues that the express terms of the article require the record to demonstrate support for having the case tried in a county beyond the adjoining judicial district, and that the record fails to show cause for transfer of the case beyond an adjoining judicial district. The State maintains that there was evidence as to why the case should be transferred; that the trial court was not required to explain the factual basis for its order; that appellant was granted a hearing on the venue issue; and that appellant presented no evidence as to why the case should have stayed in Webb or an adjoining county.

In regard to the conditions under which a trial judge may, upon his own motion, order a change of venue to a county beyond an adjoining judicial district, Article 31.01 stipulates that such an order "shall be grounds for reversal if, upon timely contest by the defendant, the record of the contest affirmatively shows that any county in his own and adjoining district is not subject to the same conditions which required the transfer." Tex. Code Crim.Proc.Ann. art. 31.01 (Vernon 1989).

Expressing doubt that the case could fairly and impartially be tried in Webb County, the trial judge issued two orders to show cause why the case should not be transferred from Webb County to an adjoining county within the judicial district or to a county not in an adjoining judicial district. The first hearing on the order was held on March 1, 1994. At this time, the Court heard evidence from both appellant and the State in relation to publicity of the case in Webb, Zapata, La Salle, Dimmit, Jim Hogg counties and to the capacity of these counties to provide the facilities, personnel, or security for appellant's trial. A research manager for the San Antonio Express News newspaper testified that he was unfamiliar with stories in his newspaper about appellant. Several law enforcement agents testified that this case received much attention in the news media from Webb and adjacent counties, and several testified that counties adjacent to Webb did not have adequate facilities or personnel for the trial.

At the conclusion of the hearing, the court explained that it issued the show cause order primarily because of the pretrial publicity in Webb County, and that the order put both sides on notice of its intent to transfer the case to another county or "beyond the jurisdictional boundaries of this district to another county beyond the adjoining counties." The court continued:

I am not sure but that the burden was on either side to have come forward and shown cause why the case should not be tried, if not in this county, in an adjoining county. I am not convinced from the evidence, although numerous witnesses have testified. I am not convinced that any of the forms [sic] in the adjoining counties would be appropriate.

Simply stated, I question whether Webb County could visit on one of the rural,

small counties, the task of trying a capital murder case. Not because of the nature of this case or because of the dangerousness of anyone or the danger to the witnesses or the defendant, the Sheriff's departments to handle the traffic and just the matter of security that goes with this type of trial. Not having heard any evidence as to why it should go into one of these adjoining counties, even though some evidence was presented concerning the ability of the different Sheriff's departments. My own experience in Zapata tells me that it is indeed a very, very difficult task to select the jury and try the case and provide adequate security for all concerned.

The court then ordered the case transferred to Bexar County. In consideration of objections from counsel for appellant, the court also granted appellant leave to file additional motions for reconsideration and evidence, but none ever were presented. At a subsequent hearing on an order to show good cause, the judge explained that Bexar County could not provide a timely courtroom for the trial, so that he ordered the case transferred to Nueces County, where the trial could begin sooner.

It is evident to us that the trial court considered conflicting evidence on whether the case could be tried in Webb and all adjoining counties in the general vicinity and determined that valid concerns necessitated the transfer of the case to a county in a non-adjoining judicial district. We therefore hold that the record affirmatively reflects that the conditions in all counties in the adjoining judicial district were subject to the same conditions that necessitated a transfer. Point of error fourteen is overruled.

## THE MANNER OF VOIR DIRE OF THE JURY

■ By points of error fifteen through seventeen, appellant claims the trial court erred by conducting *voir dire* and excusing veniremen in the absence of the defendant, violating appellant's rights under the U.S. and Texas Constitutions and the Texas Code of Criminal Procedure. Appellant argues that the judge's examination of prospective jurors constitutes a component of *voir dire* to which appellant had the right to attend. The State contends that the appellant was absent only during juror qualification, not actual *voir dire*.

Article 33.03 of the Texas Code of Criminal Procedure requires that in all prosecutions for felonies, the accused must be personally present at trial, except when the accused voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected. TEX.CODE CRIM. PROC.ANN. art. 33.03 (Vernon 1989). This right is entailed within a defendant's right to confront witnesses against him under the United States and Texas Constitutions. *Miller v. State*, 692 S.W.2d 88, 90 (Tex.Crim. App.1985). The right cannot be waived until after the jury has been selected. *Miller*, 692 S.W.2d at 91. A defendant does not have the right to be present at the questioning of a general panel of venirepersons in a central jury room who have not yet been assigned to his case. *Chambers v. State*, 903 S.W.2d 21, 30 (Tex.Crim.App.1995). The phase of *voir dire* that involves the examination and interrogation of prospective jurors for an accused's case does not commence until it first is determined just which persons will be on the jury panel for the case. *Yanez v. State*, 677 S.W.2d 62, 67 (Tex.Crim.App.1984) (en banc). But the trial court's hearing of venirepersons' excuses while appellant was absent from the courtroom has constituted error. *See Weber v. State*, 829 S.W.2d 394, 396 (Tex.App.—Beaumont 1992, no pet.). In cases of error under Article 33.03, the court must determine whether the presence of appellant bears a reasonably substantial relationship to the opportunity to defend. *Weber*, 829 S.W.2d at 396 (citing *Cooper v. State*, 631 S.W.2d 508, 512 (Tex.Crim.App.1982)).

In the instant case, appellant was not present when the trial judge qualified prospective jurors and took exemptions from service. The trial judge thus erred.

■ We cannot find, however, that appellant was harmed by his absence from this particular proceeding. Most of the exemptions granted tracked the standard legal exemptions from jury service, *i.e.*, student, over sixty-five years of age, care of an invalid.

The court dismissed one juror for what would be the basis of peremptory challenge for cause, religious convictions, but also asked for objections prior to doing so. The record reflects that counsel for appellant, who was present, said nothing. When another juror claimed an exemption on the ground that he had served time for an offense and appealed, the trial judge raised the matter for attorneys for both sides and counsel for appellant assented to this juror's exemption. *Cf. Weber*, 829 S.W.2d at 396. Appellant, moreover, was present the next day, when the stage of *voir dire* that actively implicated his right of confrontation and involved the examination and interrogation of a panel of qualified jurors began. We hold that appellant's absence during qualification of the jury was harmless. Points of error fifteen through seventeen are overruled.

## SEQUESTRATION INSTRUCTION

By point of error eighteen, appellant charges that the trial court abused its discretion in failing to enforce the rule of sequestration against State's witness Oscar Hale. The trial court permitted Hale, an investigator with the prosecuting district attorney's office, to remain in the courtroom during the trial. Appellant alleges the State never demonstrated that Hale's presence in the courtroom throughout the trial was essential. The State claims it proved that Hale's presence was essential.

Rule 613 of the Texas Rules of Criminal Evidence governs the exclusion of witnesses. The Rule provides, in part, that

> At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. The rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a defendant which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause, . . .

Tex.R.Crim.Evid. 613. Its application once discretionary, this rule now requires that the court order the witnesses excluded at the request of a party or on its own motion. *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim.App.1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). The party seeking an exception under Rule 613 has the burden of showing that one of the enumerated sections is met. *Id.* If the prosecution claims that the witness's presence is essential to the presentation of its cause, a "showing" is required, not a conclusory explanation. *Barnhill v. State*, 779 S.W.2d 890, 892–93 (Tex.App.—Corpus Christi 1989, no pet.). A mere conclusory statement by the prosecutor that it would be "necessary and essential" for him to have the witnesses present does not meet the burden for exemption from the Rule. *Hernandez v. State*, 791 S.W.2d 301, 306 (Tex.App.—Corpus Christi 1990, pet. ref'd).

In the instant case, the prosecution explained that Hale was involved with the investigation of this case since the date of the offense; that he was the lead investigator for the prosecution and helped coordinate with all the law enforcement agencies; that he assisted the prosecution in preparing this case for trial; and that his assistance and expertise would be needed with numerous items of evidence to be presented at trial. We hold this to be a sufficient showing. *Cf. Kelley v. State*, 817 S.W.2d 168, 172 (Tex. App.—Austin 1991, pet. ref'd) (holding a sufficient showing was established by prosecution's testimony that witness was lead investigator for the case, that his expertise would be needed, that numerous items of evidence were to be offered, and that the prosecution would need the witness's assistance). Point of error eighteen is overruled.

## ALIBI AND IDENTIFICATION INSTRUCTIONS

By points of error nineteen and twenty, appellant argues that the trial court erred in denying his right to an alibi instruction in the charge to the jury. Appellant roots his alibi instruction request within an accused's right of confrontation guaranteed under the United States and Texas Constitutions. Appellant argues that an alibi instruction was required, in consideration of the testimony of one witness that appellant was

not the gunman. The State argues that this is not evidence of being some other place at the time of the offense.

If the evidence raises the issue that the defendant was at some other place at the time and could not therefore have committed the crime, a charge on the defense of alibi is required. *Arney v. State,* 580 S.W.2d 836, 840 (Tex.Crim.App.1979); *Windham v. State,* 162 Tex.Crim. 580, 288 S.W.2d 73, 76 (1956). An instruction as to alibi is not required when the defendant merely denies that he was at the place where the crime was committed but does not offer affirmative evidence as to his presence elsewhere. *Windham,* 288 S.W.2d at 76. The defense of alibi is aimed to show that the accused, during the entire time the offense was committed, was so far from the place where it occurred that he could not have participated in the crime. *Villarreal v. State,* 821 S.W.2d 682, 684 (Tex. App.—San Antonio 1991, no pet.). An alibi instruction need not be given unless the evidence is inconsistent with the State's case placing the defendant at the scene at the time of the commission of the offense. *Arney,* 580 S.W.2d at 840. If a defensive theory merely negates an element of the offense, no affirmative charge must be given. *Sanders v. State,* 707 S.W.2d 78, 81 (Tex.Crim. App.1986).

Appellant relies for his argument solely on the testimony of Eli Vasquez, who stated that he had a view of the gunman and that appellant was not the gunman. This evidence merely serves to negate an element of the offense charged. It does not affirmatively support appellant's presence at some place other than the scene of the offense when it was committed. None of the other testimony that appellant was not the gunman affirmatively supports the proposition that appellant was at some other place when the offense was committed. We hold that the trial court did not err in denying the requested alibi instruction. Points of error nineteen and twenty are overruled.

■ By points of error twenty-one and twenty-two, appellant claims the trial court erred by denying his request for an identification instruction to the jury. Appellant claims this denial violated his rights under the U.S. and Texas Constitutions. Appellant further claims that an instruction on identification should be granted as a matter of law, where identity is an issue. The State argues that there is no such requirement under law, that an identification instruction would be improper, and that the "beyond a reasonable doubt" instruction adequately protected appellant's rights.

Article 36.14 of the Texas Code of Criminal Procedure requires that in felony cases, before the jury argument, the judge shall deliver to the jury a written charge setting forth the law applicable to the case and "not expressing any opinion as to the weight of the evidence" and not using any argument in the charge "calculated to arouse the sympathy or excite the passions of the jury." TEX.CODE CRIM.PROC.ANN art. 36.14. (Vernon Supp. 1997). Where the jury has been instructed that it may find a defendant guilty only if all of the elements of the offense have been proved beyond a reasonable doubt, a defendant's rights in relation to an identification issue have been adequately protected. *See Ward v. State,* 505 S.W.2d 832, 836 (Tex. Crim.App.1974), *cert. denied,* 419 U.S. 864, 95 S.Ct. 117, 42 L.Ed.2d 100 (1974); *Laws v. State,* 549 S.W.2d 738, 740 (Tex.Crim.App. 1977). As a rule, a charge on particular facts or specific parts of testimony is improper, as it constitutes a comment on the weight of the evidence. *Laws,* 549 S.W.2d at 740; *Dunne v. State,* 98 Tex.Crim. 7, 263 S.W. 608, 616 (Tex.Crim.App.1923) (on motion for rehearing). *But see Ward,* 505 S.W.2d at 836 (suggesting that an instruction may be appropriate when there is no evidence as to the identity of the perpetrator of an offense).

In the instant case, appellant sought to have the charge comment on the relationship between identification testimony and the credibility of the person who claims to have observed the offense and/or perpetrator. Appellant wanted the charge to inquire whether the jury was convinced that a witness had an adequate opportunity to observe the person who committed the crime charged, and for the charge to note the variables impacting an "adequate opportunity." This special charge requested by appellant would have directed attention to particular

parts of the testimony at trial and encouraged the jury to place special weight on this evidence. The charge of the court instructed the jury that it may find appellant guilty only if they believed all elements of the offense, including the identity of the perpetrator, were proved beyond a reasonable doubt, and this adequately protected appellant's rights. We hold that the trial court did not err in denying appellant's requested identification instructions. Points of error twenty-one and twenty-two are overruled.

By his supplemental brief, appellant waives point of error twenty-three.

Accordingly, the judgment of the trial court is affirmed.