In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00020-CR


______________________________




BILLY JOE POLSTON, A/K/A BILLY J. POLSTEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 355th Judicial District Court


Hood County, Texas


Trial Court No. CR10162




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 On the afternoon of November 6, 2006, the trial court called the case against Billy Joe
Polston, a/k/a Billy J. Polsten, for jury selection and trial on a charge of felony driving while
intoxicated (DWI). Polston's voir dire was conducted, and his jury was selected, that afternoon, from
a panel that included some veniremembers who had been voir dired that morning in connection with
a different case, but who had not been selected to serve on the other jury. Polston's jury found him
guilty, found he had been twice previously and sequentially convicted of a felony offense, and
assessed his punishment at sixty years' imprisonment. 

 Polston's sole issue on appeal asserts that his absence from the morning voir dire erroneously
denied him the right to be at his trial. Because we conclude that the morning voir dire in a different
case was not part of Polston's trial, we overrule Polston's point of error and affirm the judgment of
the trial court.

 The reporter's record in this case suggests the State was trying two cases back to back. After
a jury had been selected in a separate case, during the morning of November 6, the members of the
morning venire panel who had not been selected for that jury were then apparently "recycled" and
added to a new master jury panel, along with new veniremembers, to constitute a new jury pool from
which the Polston jury would be selected that afternoon. Because the State had questioned some of
the prospective jurors during the morning session, the State chose not to repeat many of the questions
it had asked during the earlier session. 

 That afternoon, Polston was present from the beginning of the voir dire portion of his own
trial. The State concedes on appeal, however, that Polston was not present during the morning court
session.

 Polston now contends the trial court committed reversible error by conducting the morning
voir dire session outside of his presence, allowing the State to learn information from prospective
jurors who later appeared as part of Polston's afternoon panel. Polston acknowledges that his
attorney was present during the morning voir dire of the unrelated case; but Polston contends he was
not himself also present and, therefore, error exists requiring reversal of his conviction and remand
for a new trial. 

 Our law requires that a defendant must be present for all portions of a trial in which the
accused is charged with a felony, except in cases where the defendant voluntarily absents himself
or herself either after pleading to the charge or after the jury has been selected. Tex. Code Crim.
Proc. Ann. art. 33.03 (Vernon 2006). When the record affirmatively shows the accused was present
for any portion of the trial, however, the reviewing court must presume, absent evidence to the
contrary, that the accused was also present during the entire trial. Id.

 In Bledsoe v. State, 936 S.W.2d 350, 351-52 (Tex. App.--El Paso 1996, no pet.), the accused
contended on appeal that the trial court had erred when it had conducted voir dire in her case outside
her presence. Id. at 351. The State conceded Bledsoe's absence during voir dire in that case. Id. 
That appellate court concluded error had been shown and, after reviewing the record for harm,
concluded the record demonstrated harm sufficient that the reviewing court could not conclude
beyond a reasonable doubt that the error did not contribute to her conviction or punishment. Id. at
352 (citing former appellate procedure Rule 81(b)(2), now Rule 44.2(a) of the Texas Rules of
Appellate Procedure).

 In this case, all Polston missed during the morning court session was the voir dire of a
different case. But missing part of voir dire during another person's trial does not constitute missing
a portion of one's own trial. Merely because the State may have learned information that it later used
in selecting jurors in Polston's case does not thereby transform any part of that other trial into a part
of Polston's trial. (1)

 Polston's absence during the voir dire of another case did not deny him his right to be present
during his own trial. Polston's presence during the voir dire of another case does not bear a
reasonable and substantial relationship to the opportunity to defend himself at his own trial. Accord
Mares v. State, 571 S.W.2d 303, 307 (Tex. Crim. App. 1978); see Bath v. State, 951 S.W.2d 11, 22
(Tex. App.--Corpus Christi 1997, pet. ref'd); Bledsoe, 936 S.W.2d at 351; Weber v. State, 829
S.W.2d 394, 396 (Tex. App.--Beaumont 1992, no pet.); cf. Adanandus v. State, 866 S.W.2d 210,
218-20  (Tex.  Crim.  App.  1993).  Moreover,  Polston  has  not  shown  that  his  absence  from
the voir dire in a different case in any way harmed his defense. See Haygood v. State, 127 S.W.3d
805, 812 (Tex. App.--San Antonio 2003, pet. ref'd).

 Finding no violation of Article 33.03, we affirm the trial court's judgment.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: April 25, 2007

Date Decided: May 30, 2007


Do Not Publish


1. To demonstrate further the flaw in Polston's argument, assume hypothetically that the
prosecutor has previously met someone while watching a high school football game and learns from
this individual that he is a true "law and order" kind of guy. The following week, the prosecutor sees
this new acquaintance on a venire panel. That Friday night conversation has not become part of the
trial being conducted on Monday.


e trial
court to (1) withdraw an August 27, 2003, order denying Works' motion to disqualify
attorney Ben Franks as opposing counsel, (2) enter an order granting Works' motion to
disqualify Franks as opposing counsel, and (3) enter an order prohibiting Franks from
communicating any privileged information to the new counsel. Based on the record and
pleadings before us, and without hearing oral argument, we deny the petition.
I. Factual and Procedural Background
          Raymond and Delores Head married in 1996. On August 25, 1997, as they were
walking down a street in Texarkana, Texas, Raymond and Delores were struck from behind
by a car operated by Linda Burks, an employee of Budget Rent-A-Car. Raymond and
Delores sued both Budget Rent-A-Car and Burks (collectively "Budget") for injuries they
suffered in the accident. Franks represented both Raymond and Delores in the suit. 
According to Delores' testimony, Raymond's claims against Budget were resolved first, and
it was not until later that Delores settled her claims against the company. This, according
to Delores, resulted in two separate settlements: one for Raymond, and one for herself. 
          On Thursday, February 13, 2003, Raymond died. His survivors include Delores, two
daughters, Marla Hohner


 and Lori Tally, and a grandchild, Clayton Tally. In the copy of
the will submitted for probate, Raymond named Works as the executor of his estate. The
copy of the will seeks to devise Raymond's estate to his daughters and grandson, but
makes no provision for Delores. 
          Delores filed a contest to the will. Delores chose Franks, the attorney who
represented her in the suit against Budget, as counsel of record in the will contest. In
response, Works sought to have Franks disqualified on the basis that Franks' prior
representation of Raymond is adverse to Delores' claims against Raymond's estate. 
Works also announced his plan to call Franks as a material witness in its defense of the
will. Works contends Franks structured Raymond's and Delores' settlements separately
pursuant to a premarital agreement. Franks' knowledge of a premarital agreement,
according to Works, makes him an essential fact witness in the will contest. Should Works,
as executor of the estate, not be able to bring forth a copy of the premarital agreement,
and if the copy of the will submitted for probate is not approved by the probate court,
Works hopes to show that Delores and Raymond nonetheless had a premarital agreement
and that, therefore, Delores should receive none of Raymond's property that might
otherwise be considered community property in the event Raymond died intestate. 
          The trial court denied the estate's motion to disqualify Franks. Works now asks us
to disqualify Franks as Delores' counsel. 
II. The Applicable Standards
          A. Mandamus Relief 
          Mandamus will issue only when the mandamus record establishes (1) a clear abuse
of discretion or the violation of a duty imposed by law, and (2) the absence of a clear and
adequate remedy at law. Cantu v. Longoria, 878 S.W.2d 131, 132 (Tex. 1994); Walker v.
Packer, 827 S.W.2d 833, 839-40 (Tex. 1992). Mandamus is an extraordinary remedy that
will issue only to correct a clear abuse of discretion or, in the absence of another statutory
remedy, when the trial court fails to observe a mandatory provision conferring a right or
forbidding a particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985). 
Mandamus may issue even on questions of first impression if, as a matter of law, the trial
court erred in its analysis and reached an erroneous legal conclusion. Huie v. DeShazo,
922 S.W.2d 920, 927-28 (Tex. 1996).
          B. Attorney Disqualification
          A party seeking to disqualify an attorney must show the existence of a prior attorney-client relationship "in which the factual matters were so related to the facts in the pending
litigation that it creates a genuine threat that confidences that were revealed to the former
attorney will be revealed by that attorney to its present adversary." In re Cap Rock Elec.
Coop., Inc., 35 S.W.3d 222, 230 (Tex. App.‒Texarkana 2000, orig. proceeding). This
"substantial relationship" test is a product of common law and predates the Texas Rules
of Disciplinary Conduct for attorneys. Id. When seeking disqualification, "[t]he movant has
the burden of producing evidence of such specific similarities capable of being recited in
the disqualification order." Id. 
III. Analysis
          In the case now before us, the parties have supplied documents from the Budget
lawsuit, transcripts of hearings on two separate motions to disqualify Franks, and
documents related to the probate proceedings. The parties agree that Franks previously
worked as Raymond's attorney in Raymond's claims against Budget. The parties disagree,
however, on whether the substance of that prior lawsuit (and any information garnered
from Franks' representation of Raymond during that period) bears a substantial relationship
to the substance of the will contest.
          Texas courts have often looked to the disciplinary rules to decide disqualification
issues. In re Meador, 968 S.W.2d 346, 350 (Tex. 1998). While the disciplinary rules are
merely guidelines, not controlling standards, for court-ordered disqualification, the rules do
provide reasonable guidance‒even in cases where an attorney may not have clearly
violated one of its canons. Id. at 351; see also In re Bahn, 13 S.W.3d 865, 872 (Tex.
App.‒Fort Worth 2000, orig. proceeding) (quoting Rule 3.08 extensively). Rule 3.08 of the
Texas Disciplinary Rules of Professional Conduct states:
(a)A lawyer shall not accept or continue employment as an
advocate before a tribunal in a contemplated or pending adjudicatory
proceeding if the lawyer knows or believes that the lawyer is or may be a
witness necessary to establish an essential fact on behalf of the lawyer's
client, unless:
 
(1)the testimony relates to an uncontested issue;
 
(2)the testimony will relate solely to a matter of formality
and there is no reason to believe that substantial evidence will be
offered in opposition to the testimony;
 
(3)the testimony relates to the nature and value of legal
services rendered in the case;
 
(4)the lawyer is a party to the action and is appearing
pro se; or
 
(5)the lawyer has promptly notified opposing counsel that
the lawyer expects to testify in the matter and disqualification of the
lawyer would work substantial hardship on the client.
Tex. Disciplinary R. Prof'l Conduct 3.08, reprinted in Tex. Gov't Code Ann., tit. 2,
subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9). 
          In this case, Works has made clear he intends to call Franks as a material fact
witness. The substance of the expected testimony concerns whether Raymond and
Delores had a valid premarital agreement that would prevent Delores from claiming a
portion of Raymond's estate as community property in the event the trial court determined
Raymond died intestate. The record before us, however, does not demonstrate that
Franks' prior representation of both Raymond and Delores is substantially related to his
representation of Delores in the will contest. 
          First, the factual substance of Franks' prior attorney-client relationship with
Raymond concerned injuries Raymond sustained in a motor vehicle-pedestrian accident. 
The substance of the present suit concerns the proper division of Raymond's estate. The
bases of the two suits are not the same. Further, because Franks jointly represented
Raymond and Delores, there is no threat that "confidences that were revealed to the
former attorney will be revealed by that attorney to its present adversary." See Cap Rock
Elec. Coop., Inc., 35 S.W.3d at 230. Any confidences between Raymond and Franks are
assumed to have been revealed to Delores in 1998 as a result of Franks' joint
representation. Cf. Tex. R. Evid. 503(d)(5) (no attorney-client privilege for communications
relevant to parties of joint representation if communication was made by any of them when
subsequently offered in action between the former joint clients). Thus, the fear of
disclosure of confidential information to an adverse party is a moot issue: any such
information has already been disclosed to Delores, who is free to disclose it to Franks,
another attorney, or anyone she so chooses.
          Second, Works has not provided this Court with a copy of any premarital agreement
between Delores and Raymond. Not all premarital agreements remove the couple's entire
marital estate from Texas' community property laws. Many, if not most, assuredly do. 
Some premarital agreements, however, only purport to remove certain items of the marital
estate (i.e., gains from the sale of stock in the person's premarriage portfolio, or employee
pension contributions and/or benefits) from the community property laws. Assuming,
arguendo, that Raymond and Delores had a premarital agreement, it is impossible to
understand its scope without having the actual agreement before us. Nor would it be
proper for us to speculate as to either the contents of an unseen premarital agreement or
its impact on whether Franks would be a material witness regarding the agreement's effect
on the division of Raymond's estate. 
          Third, none of the witnesses who testified regarding disqualification affirmatively
testified they had personal knowledge of a premarital agreement between Raymond and
Delores. Instead, the testimony before the trial court on the subject consisted of hearsay
and innuendo. The trial court sustained objections to much of the hearsay testimony. The
remaining evidence consisted of testimony regarding conversations Delores had with
Works over several days shortly after Raymond's death. Works claims Delores admitted
she knew she had signed a premarital agreement with Raymond. Works also contends
the premarital agreement precludes her from receiving any of Raymond's property. 
Delores testified she unwittingly misled Works into thinking she and Raymond had a
premarital agreement when, in fact, she was only agreeing with anything Works said so
that he would leave her alone and so that she could focus on grieving for Raymond. This
testimony, if believed, would be a reasonable explanation of what might otherwise be seen
as admissions on a key fact in this case. Thus, on the meager record before us, it would
be a stretch for us to say that the record mandates that the trial court disqualify Franks.
          Fourth, there is no evidence before us that Franks drafted either the alleged
premarital agreement or the copy of the will submitted for probate. In fact, Delores testified
the document she signed before marrying Raymond was something she believed had been
drafted by an attorney named Don Friedman. Except in narrow circumstances not
applicable here, the Texas Rules of Disciplinary Procedure do not prohibit Franks from
representing Delores' challenge to the validity of Friedman's work product.



          Fifth, Franks repeatedly told the trial court he did not draft any alleged premarital
agreement between Raymond and Delores. This testimony, if believed, would directly
contradict the estate's contention that Franks should be disqualified because Delores'
claims against the estate represent a challenge to Franks' prior work product on
Raymond's behalf. Thus, we cannot say the trial court abused its discretion by siding with
one version of the evidence, rather than the opposite version. 
          Sixth, whether, in 1998, Franks may have structured Raymond's and Delores'
settlements in accordance with a premarital agreement bares no direct impact on whether
such agreement still existed in 2003. It is possible, assuming, arguendo, a premarital
agreement existed, Raymond and Delores revoked such an agreement before Raymond's
death. However, without first having proof of the premarital agreement, demonstrated by
introducing the actual agreement or through testimony from a witness with personal
knowledge of the agreement's existence and its contents, the trial court should not be
required to presume the continued existence of a valid, binding premarital agreement or
its contents.
IV. Conclusion
          Based on the record before us, we find the trial court did not abuse its discretion by
denying Works' motion to disqualify counsel. The record fails to demonstrate that Franks'
prior representation of Raymond bears such a substantial relationship to his adverse
representation of Delores in the will contest that Franks should be disqualified in the
present litigation. We deny the petition for writ of mandamus.
 
                                                                           Donald R. Ross
                                                                           Justice

 
Date Submitted:      October 16, 2003
Date Decided:         October 17, 2003