**Enrique HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–182–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 31, 1990.

**302**

Nickolas S. Barrera, Brian W. Wice, Houston, for appellant.

Wiley L. Cheatham, Dist. Atty., Cuero, for appellee.

Before NYE, C.J., and SEERDEN and DORSEY, JJ.

## OPINION

SEERDEN, Justice.

A jury found appellant guilty of possessing between 200 and 2,000 pounds of marihuana. The trial court assessed punishment at 15 years in prison and a fine of $25,000. Appellant challenges the sufficiency of the evidence and raises ten other points of error. We find the evidence sufficient but reverse the judgment for trial error. We remand the cause to the trial court for new trial.

In his first point, appellant contends that the evidence is insufficient to sustain the conviction. Specifically, appellant argues that the evidence fails to show any affirmative link between him and the marihuana to show that he knowingly possessed the 975 pounds of marihuana hidden in a secret compartment in the trailer of his 18–wheeler. To sustain a conviction for possession, the State must show that the accused was more than merely present in the vicinity of a controlled substance. *Humason v. State*, 728 S.W.2d 363, 365 (Tex. Crim.App.1987); *see Zertuche v. State*, 774 S.W.2d 697, 700–701 (Tex.App.—Corpus Christi 1989, pet. ref'd).

Appellant, a truck driver, owned his own tractor but not trailer. On September 10, 1987, appellant picked up a trailer containing produce at Rio Grande Trucking in Pharr with instructions to take it to Ortiz Produce in Houston.

Just north of Edinburg, DPS Officer Larry Pruitt stopped appellant's vehicle to check the licensing, registration, and weight of the vehicle. The tractor was registered to appellant, and the trailer was registered to Raul Gonzales.

Pruitt's inspection of the tires indicated that the vehicle was not overweight, so he did not open the trailer. When he requested to see the documents which commercial vehicles are required to carry, he learned that appellant did not have a permit to haul for hire, a lease to haul for Rio Grande Trucking, or a motor carrier certificate. Appellant also did not have correct signs on the doors of his vehicle. Pruitt testified at trial that appellant seemed unfamiliar with the required permits.

During the stop, appellant produced an invoice to show that he was destined for Ortiz Produce in Houston. Although the invoice should have shown the charges for the haul, it did not, and appellant did not know what he was getting paid to haul the load. Pruitt also noticed that appellant had in his possession a bill of lading from a prior trip to Ortiz Produce.

Despite finding the several violations, Pruitt ticketed appellant for only one offense. Appellant was in such a rush to leave after being ticketed that he left his truck folder in Pruitt's car.

After appellant left, Pruitt became suspicious. It was unusual for an owner-operator not to know how much he was getting paid. Furthermore, it was unusual that appellant still had a prior bill of lading, which normally would have been "turned in" to get payment for the haul. Pruitt also found it suspicious for appellant to be so unfamiliar with the required documents. Pruitt relayed his suspicions to DPS Officer Lozano who worked in criminal enforcement.

Shortly thereafter, DPS issued a bulletin requesting other officers to stop appellant's vehicle and to request consent to search the vehicle. Around 2:00 a.m., Officers Juan Hernandez and Nelson Gillespie located appellant's vehicle at a roadside park south of Woodsboro. As a safety precaution, they drove through the park, radioing the license plate numbers of other vehicles in the park back to the dispatcher. A car with Mexico license plates sped away when they shined their light on it.

After making their run through the park, the officers returned to appellant's vehicle and knocked on the door. Appellant, who was asleep, woke up and ultimately consented to a search of his vehicle.

Officer Hernandez, who conducted the search, testified that a portion of the produce was spoiled and not fit for human consumption. Hernandez also testified that the truck was only partially loaded. Officer Pruitt testified that it would be unusual for a truck to leave the Valley carrying only a partial load of produce.

As Officer Hernandez conducted the search, Officer Gillespie remained with appellant. Gillespie testified that as Hernandez got deeper into the trailer, appellant became more nervous. At one point, appellant mentioned to Gillespie that somebody might have turned him in.

To assist his physical search, Hernandez requested that a drug-detecting dog be brought to sniff the truck. The dog alerted to the front portion of the trailer. Ultimately Hernandez measured the trailer and found that it was two feet longer on the outside than on the inside. Hernandez then ripped away a wall which had been constructed across the front of the trailer. The wall was made of aluminum and plywood, and it was sealed with silicone.

Hernandez testified that the front of the trailer was noticeably altered. The wall concealed a compartment which contained 71 bundles of marihuana weighing 975 pounds.

Appellant was arrested. Police discovered $823.00 on appellant. Another $2,000 was found in his truck cab.

After the incident, police discovered that a pickup truck which had been adjacent to appellant's vehicle in the roadside park was registered to Jorge Rodriguez, the owner of Rio Grande Trucking. Further investigation showed that Raul Gonzales, who owned the trailer in which the marihuana was found, listed a vacant lot in Edinburg as his address.

At trial, Officer Hernandez testified that he remembered another truck at the roadside park that night, the license number of which apparently was not retained. In hindsight, though, he believed it to be

owned by Raul Gonzales. Hernandez testified that in his experience, persons who haul large quantities of marihuana will often travel together in separate vehicles.

At trial, Julian Longoria, an inspector with the Texas Department of Agriculture, testified to matters concerning Ortiz Produce in Houston. Despite years of being an inspector in Houston, Longoria had never heard of or seen Ortiz. Documents introduced at trial showed that Ortiz received his license to sell produce in July 1987 and did not renew it. On the license application, Ortiz listed his social security number as 457–92–3405. Further evidence showed that this social security number belonged to appellant.

Appellant and Jorge Rodriguez testified in appellant's defense. Appellant testified that he did not know he possessed the marihuana. He explained that as the owner of a truck, he customarily carried large sums of cash for emergency truck repairs. He testified that he briefly inspected the interior of the truck before watching the produce be loaded. He did not notice anything unusual about the interior of the trailer. There was some evidence that Gonzales directly contacted appellant to haul the load. Other evidence was also admitted to show that appellant previously hauled a shipment to Ortiz Produce. At that time, appellant left the trailer, and he did not get the invoice signed. The State used these facts to help establish that an unusual relationship existed between Ortiz and appellant.

Jorge Rodriguez testified that he owned Rio Grande Trucking. On September 10, Gonzales came by the company and said he needed a driver. Gonzales contacted appellant. Rodriguez testified that he left for West Texas shortly after appellant left for Houston. He denied being at the roadside park. Through its examination of appellant and Rodriguez, the State developed that both failed to keep accurate records of their shipments and often dealt only in cash.

Appellant contends that these circumstances fail to establish his guilt. We find that the combined facts sufficiently establish appellant's guilt. While we can point to no one fact in particular which would alone concretely establish appellant's guilt, taken together, the accumulation of facts is sufficient to justify the jury's finding. Appellant's statement to Gillespie, appellant's cash transactions, his failure to possess the proper commercial permits, his social security number being the same as the intended receiver of the produce, his hauling of spoiled produce, and the presence of Rodriguez' vehicle all combine to show that the appellant did not ignorantly possess the marihuana. Together, these facts sufficiently link appellant to the marihuana. Appellant's first point of error is overruled.

In his second and third points of error, appellant complains that the trial court erred in overruling his motion to quash the indictment. Appellant based his motion on grounds that State witnesses were permitted to question appellant during the grand jury proceedings and were allowed to testify in each others presence. Evidence presented on the motion showed that certain officers who testified against appellant were present when each other and appellant testified before the grand jury. The record developed by appellant also shows that one or more officers actually asked appellant questions before the grand jury. Appellant does not contend, nor does the record show, that any impropriety occurred while the grand jury was deliberating or voting.

Although a series of cases criticizes procedures similar to those used by the grand jury in the present case, no case requires a trial court to quash the indictment under these circumstances. *See Ex parte Rogers*, 640 S.W.2d 921, 924 (Tex.Crim.App. 1982) (two DPS officers were in the grand jury room, and one asked the defendant questions); *Minton v. State*, 468 S.W.2d 426, 432 (Tex.Crim.App.1971) (an officer and fact witness against the defendant were present in the grand jury room and heard the testimony of other witnesses); *Spaulding v. State*, 656 S.W.2d 538, 541 (Tex.App.—Corpus Christi 1983, pet. ref'd) (a deputy sheriff testified before the grand jury and was present during the defen-

dant's grand jury testimony). In each case, despite the presence of other witnesses or the questioning of the accused by other witnesses, the reviewing Courts found no reversible error.[1] Accordingly, appellant's second and third points of error are overruled.

In his fourth point of error, appellant contends that the trial court erred in overruling his request to require the State to produce tape recordings of appellant's and another defense witness' grand jury testimony. Appellant argues first under this point that he needed the tapes to establish the factual basis of his motion to quash. Having accepted as fact that one or more officers questioned appellant, we have already held that no reversible error occurred.

 Appellant also argues that he was entitled to the grand jury tape because the prosecutor impeached both him and his witness, Jorge Rodriguez, with portions of the grand jury testimony. The State argues that while the prosecutor was "heading down the impeachment path," the prosecutor never did in fact impeach the witnesses. The State does not contend that appellant failed to preserve error either because his trial objection was insufficient or because the point of error is multifarious. Accordingly, we address the point on its merits.

Generally, a defendant is not entitled to review grand jury testimony. *See Mott v. State*, 543 S.W.2d 623 (Tex.Crim.App.1976). An exception, the State concedes, exists when the grand jury testimony is used by the prosecutor in questioning a witness or when portions of it are introduced into evidence. *See Hoffpauir v. State*, 596 S.W.2d 139, 141 (Tex.Crim.App.1980); *Johnigan v. State*, 502 S.W.2d 136, 137 (Tex.Crim.App. 1973). If the State does "use before the jury" the grand jury testimony of a witness, then the defendant is entitled to inspect and use the testimony insofar as it covers the same subjects involved in the portions used or introduced by the prosecu-

tion. *Id.* at 137; *See also White v. State*, 478 S.W.2d 506 (Tex.Crim.App.1972).

The record shows that Jorge Rodriguez and appellant were both cross-examined by the State. The prosecutor repeatedly asked the witnesses questions which were prefaced in terms of "didn't you tell the grand jury"—something different. At times, the witnesses said they could not remember, or they acknowledged making contrary statements.

For example, the prosecutor questioned appellant about a discrepancy between his trial testimony, wherein he admitted making a previous haul to Ortiz Produce on September 3, and his grand jury testimony where he denied it. The prosecutor also questioned appellant about inconsistencies relating to the previous invoice for a delivery to Ortiz Produce which had been found in appellant's possession. The invoice was not signed. Appellant testified before the grand jury that he would get the invoice signed if he was not paid for the delivery. At trial appellant testified that he delivered produce to Ortiz on September 3 but did not get paid for it. By using the grand jury testimony the State was able to impeach appellant's credibility and also show that the relationship between appellant and Ortiz Produce was unusual.

Through use of the grand jury testimony, the prosecutor also inserted information that appellant had apparently told the grand jury that someone else had made the delivery to Ortiz on September 3 and that he did not know how the invoice got in his truck. This information conflicted with appellant's trial testimony.

The State contends that the present case is like *Johnigan v. State*, 502 S.W.2d 136, 137 (Tex.Crim.App.1973). In *Johnigan*, the grand jury transcript was not read from, quoted, or displayed to the jury. The prosecution asked a witness several times if she had made inconsistent statements under oath to him or before the grand jury. In each case, the witness either denied making

---

1. Tex.Code Crim.Proc.Ann. art. 20.04 (Vernon Supp.1990) was amended effective September 1, 1989 to read, in part, "No person other than the attorney representing the State or a grand juror may question a witness before the grand jury." Appellant was indicted in 1987. Before its amendment, art. 20.04 did not specifically prohibit questioning by other persons.

inconsistent statements or maintained that she could not remember any inconsistency in her testimony. The prosecutor made no attempt to contradict her by referring to the transcript.

■ In the present case, the prosecutor repeatedly contradicted the witnesses by comparing the trial and grand jury testimony. Unlike *Johnigan,* the prosecutor explicitly used the grand jury testimony to impeach the trial testimony. Since the prosecutor used the grand jury testimony in such manner, the trial court should have given the appellant the opportunity to inspect the relevant portions of the grand jury tape. Appellant was entitled to introduce any portions of the grand jury testimony tending to explain the disclosed apparent inconsistency. *See State ex. rel. Hightower v. Smith,* 671 S.W.2d 32, 35 (Tex.1984). A failure to permit or compel such inspection is reversible error, and a showing of harm flowing from the error is not required. *White v. State,* 478 S.W.2d at 511–512. Appellant's fourth point of error is sustained.

■ In his fifth point of error, appellant contends that the trial court erred in excusing a State witness from the rule. The trial court allowed Deputy Juan Hernandez, one of the state's primary witnesses, to remain in the courtroom during the testimony to assist the prosecutor. We recently addressed the same matter in *Barnhill v. State,* 779 S.W.2d 890, 892–893 (Tex.App.—Corpus Christi 1989, no pet.). Under Tex.R.Crim.Evid. 613, the trial court may excuse a witness form the rule where a party shows that the witness is "essential to the presentation of his cause." In *Barnhill,* we held that the State's explanation that the witness was a case worker did not constitute a "showing" that the witness was essential. *See Aguilar v. State,* 739 S.W.2d 357, 358–359 (Tex.Crim.App.1987); *Hendley v. State,* 783 S.W.2d 750, 752 (Tex. App.—Houston [1st Dist.] 1990, no pet.). In the present case, the State's sole attempt to make the required showing consisted of the prosecutor's conclusory statement to the court that it would be "necessary and essential" for him to confer with

Hernandez during the testimony. Without requiring any further explanation, the trial court granted the State's request over appellant's objection, stating that the rules of evidence allow a case agent to be excused. As in *Barnhill,* we find that such a conclusory explanation does not constitute the "showing" contemplated by Rule 613. Accordingly, we examine whether the error is reversible. Tex.R.App.P. 81(b)(2). *See Barnhill,* 779 S.W.2d at 893; *Hendley,* 783 S.W.2d at 752.

We find the error harmless for several reasons. In the context of this case, even though Deputy Hernandez was one of the State's primary witnesses, his testimony did not coincide with any of the witnesses who testified before him. Hernandez followed Officers Pruitt and Lozano to the stand. Neither Pruitt nor Lozano were present when Hernandez discovered the marihuana.

In addition, as set forth under the first point of error, many of the specific facts to which Hernandez could testify were not contested and in fact were admitted. For example, appellant did not contest the discovery of the 975 pounds of marihuana in the trailer. Although Hernandez' testimony partly coincided with the testimony of later witnesses, we can find beyond a reasonable doubt that the excusal of Hernandez from the rule did not contribute to the conviction. This is because much of the evidence that circumstantially shows appellant's knowing possession relates to his prior activities and relationship with Ortiz Produce, his lack of record keeping, his relationship to Raul Gonzales, his unusual trucking practices, and his statement to Gillespie. Hernandez testified to none of these facts. Appellant's fifth point of error is overruled.

■ In points of error six through twelve, appellant contends that the trial court erred in overruling his objections to improper jury argument. We will address the complaints in the order raised by appellant. In the first instance, the prosecutor argued:

> I think you ought to be proud that you've got some officers that are willing

to get out there at that time of the morning and put their life on the line to try to get rid of scum and goats like we have here today in our country.

In *Tompkins v. State*, 774 S.W.2d 195, 217–218 (Tex.Crim.App.1987), the Court of Criminal Appeals discussed the propriety of argument which abuses or derides the defendant. Noting that abuse is not argument, and vituperation is not logic, the Court nonetheless held that not all improper argument requires reversal. *Id.* at 218. The Court stated that objectionable argument "may be so illogical, fanciful or extravagant as to require the conclusion that it could not have influenced the jury in arriving at their verdict." *Id.* at 218. While the above argument improperly implied that appellant was a "scum and goat," we find the argument not reversible. Appellant's sixth point of error is overruled.

■ In three related points (7, 9, 11) appellant contends that reversible error occurred when the prosecutor referred to evidence outside the record. The prosecutor argued:

> From the evidence you've heard here these past few days, I'm convinced that we only caught one-half of that load of marihuana that was moving that night. We caught—And, from the evidence, only have one guilty defendant before you at this time rather than a number of them.

> * * * * * *

> I'm not telling anybody that he [Deputy Hernandez] went up to it [the other truck]. I think it's unfortunate that they didn't. If they had done some checking, we might have two loads [of marihuana] ... I submit to you, that from the evidence we heard, we only caught one-half of that dope that night.

> * * * * * *

Deputy Juan Hernandez and, again, you take your recollection—told you from the evidence he saw out there that night and what they learned later, he thinks that the other 18 wheeler was Gonzales' 18 wheeler.

Appellant contends that these arguments were based on matters not in evidence. Deputy Hernandez testified that he remembered there being another 18–wheel truck at the roadside park. In hindsight, he thought it might have belonged to Raul Gonzales. The evidence definitely did not establish that the truck belonged to Gonzales. We find the argument improper. Even if the evidence showed that two trucks were involved, no evidence showed that the other truck contained marihuana. The State contends that such a fact is a proper inference from the evidence because there was some testimony to the effect that persons hauling large quantities of contraband often split the load and travel together in separate vehicles. While there was testimony to this effect, the argument that the police only caught half the load is strained and is not logically inferable from the facts definitely established. Nonetheless, we find the argument not reversible. This argument did not ask the jury to speculate about matters not in evidence; it merely seems to draw a conclusion which is not supported by the evidence.

The jury knew the facts which the State relied upon to reach its conclusion. The jury certainly knew that another truck was not searched and that other marihuana was not found. Moreover, the trial court assessed punishment, and any marihuana possessed by appellant over that discovered in his truck would not have affected the jury's verdict on guilt. Points seven, nine and eleven are overruled.

■ In point of error eight, appellant contends the following prosecutor's argument was error:

> You don't have to have a defendant that comes in and says, 'Yes, I had it [marihuana] in my hands. I had it in my possession.' If you tried 1,000 of them, I don't believe you would have one of them come in here and tell you that.

The appellant argues that this argument injected facts outside the record. The State contends that this argument was responsive to appellant's argument that the State failed to meet its burden of proof.

The State also argues that this is general argument relating common knowledge that persons accused of crimes do not generally admit their guilt. We agree with the State. In context, the argument was nothing more than a general attempt to convince the jury not to expect the defendant to admit guilt. Moreover, the argument was an attempt by the State to explain why the case rested solely on circumstantial evidence. Appellant's eighth point of error is overruled.

█ In his tenth point, appellant contends reversible error occurred when the prosecutor argued:

He's in here trying to get you to turn this man loose, because in my opinion, from what we have heard from the evidence, I think Jorge Rodriguez and his brother were in it just as deep as Raul Gonzales and this man up there in Houston.

Following appellant's objection, the trial court instructed the jury to disregard the prosecutor's personal beliefs. In context, the State's argument did not inject new facts. There was sufficient evidence from which the jury could have inferred that appellant, Gonzales, Rodriguez, and Rodriguez's brother were involved in the hauling of marihuana. This inference arises from the unusual business practices of Rodriguez and appellant, the relationship between Gonzales, Rodriguez, and appellant, and the appearance of Rodriguez' vehicle at the roadside park. While the evidence admittedly does not show directly that such relationship existed, such an inference was permissible from the evidence introduced. Appellant's tenth point of error is overruled.

Because we sustained appellant's fourth point of error, the judgment of the trial court is reversed, and the cause is remanded for new trial.