NUMBER 13-00-771-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 

 

HUMBERTO RODRIGUEZ, JR., Appellant,



v.




THE STATE OF TEXAS, Appellee.

 

On appeal from the 92nd District Court of Hidalgo County, Texas.


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Rodriguez

Opinion by Justice Yañez

 
 By seven points of error, appellant Humberto Rodriguez, Jr. challenges his conviction for the aggravated
kidnapping and capital murder of Hector Salinas after a jury found him guilty of both offenses. The jury
assessed punishment for the aggravated kidnapping to be twenty-eight years confinement. As for the capital
murder, the State did not seek the death penalty and the judge sentenced appellant to life in prison. The trial
court has certified that this case is not a plea bargain case and the defendant has the right of appeal. See Tex.
R. App. P. 25.2(a)(2). We affirm in part, and reverse and render in part.

I. Facts

 Briefly, the State alleges appellant was part of a conspiracy to kidnap Hector Salinas in McAllen, Texas, then
torture and murder him in Mexico. The following testimony outlines the evidence.

A. Non-accomplice Testimony

1. Background Regarding the Victim


 DEA agent Tony Dominguez testified: Hector Salinas was arrested when drugs were found at his
second-hand clothing store in McAllen on May 1, 1997; he made a deal to implicate the individuals for whom
he was storing the drugs and was released the next day; and he was scheduled to testify in a federal trial on
July 21, 1997.

 Guadalupe Salinas, Hector's wife, testified that she saw appellant come to Hector's store the day before the
kidnapping to ask him about a car in front of the store that was for sale.

2. Background Regarding Appellant

 Juanita Mendoza, the wife of appellant's cousin, Victor Hugo Rojas, testified that appellant visited their home
in McAllen two or three times in a green Suburban shortly before July 17, 1997, the date of the kidnapping.

 Juan Garcia, an acquaintance of the appellant, testified that appellant often stayed at a mobile home in the
same area as his own and he had seen a dark Suburban parked near that mobile home.

 Texas Ranger Israel Pacheco testified that, during his interview with appellant, appellant gave his address as
the mobile home Garcia indicated.

3. The Crime

 Eyewitnesses Pedro Magana and Jose Antonio Salinas, Hector's brother, testified: a green Suburban with
dark windows arrived at Hector's store during the evening of July 17, 1997; a man got out and asked about a
car that was for sale in front of the store; the man asked for Hector; after Hector identified himself, the man
grabbed Hector and put a gun to his head; then, several men jumped out of the Suburban; and they pushed
Hector into the Suburban. Jose Antonio further testified that the vehicle had Mexican license plates.

4. The Aftermath

 Police officer Guadalupe Cavazos testified that a burned Suburban was found about a mile away from the
store just hours after the kidnapping. Cavazos also testified that a can of charcoal lighter fluid, a pair of
handcuffs and a beer can were found with the burned Suburban.

 Lead detective Ralph Ramirez testified that he was notified of a body discovered wrapped in a blanket in
Reynosa, Mexico on July 22, 1997. He further testified that the license plate found with the burned Suburban
was traced by Mexican police and was found to be registered to a green Chevy Suburban.

 Hector's wife testified that she was able to confirm the identity of the body found in Reynosa as her husband.

 Fulgencio Salinas testified that he performs autopsies and reviewed the autopsy report done by Dr. Ruben
Santos, who is now deceased. He testified that the autopsy report indicated: the body was badly
decomposed; the man had been dead for four to five days; the most likely cause of death was asphyxiation; 
and there was evidence that a plastic bag had been placed over the head and held in place with duct tape.

 Evidence technician Miguel Alcantar and latent print examiner Heriberto Vigil testified that they were able to
identify the thumbprint from the body as belonging to Hector.

B. Accomplice Testimony

 Jose Angel Wyant and Freddy Camacho, two of the many accomplices to the crime, testified at trial that
appellant was involved. Each has been imprisoned for his part in this crime.

 Wyant offered the following relevant testimony: one of the other accomplices called Hector shortly before
the kidnapping to tell him to be outside so they could look at the car for sale in front of the store; later on,
appellant was at the house in Mexico; appellant was one of three in the room with Hector and hit him; 
Hector was hit several times with fists and a handgun; as a result, Hector was bleeding; Hector's eyes were
not visible; Hector couldn't move; appellant left; and another accomplice strangled Hector.

 Accomplice Freddy Camacho testified: he was approached by Rojas, who was accompanied by appellant,
about the kidnapping and they spoke for thirty minutes; he overheard a twenty-minute phone call a few hours
before the kidnapping from Rojas to appellant in which arrangements were made; Rojas then called Hector
and made plans to look at the car for sale in front of the store; appellant drove the green Suburban to the
meeting place-Rojas's home, to Hector's store, and to the burn site in the hours before the kidnapping; after
the kidnapping, appellant switched vehicles and got in a brown van with other accomplices to take Hector
across the border; at the checkpoint, appellant told Hector not to scream or do anything out of the ordinary
or else he would face the consequences; once at a house in Mexico, appellant and two others took Hector to
the bedroom and tied him face down to the bed with an extension cord and bed sheets; all three were on top
of Hector and hitting him; and during the beating appellant threatened Hector's son.

C. Epilogue

 The search for other accomplices continues. Meanwhile, the federal trial, in which Hector was supposed to
testify, ended in an acquittal for all seven defendants.

II. Elements of the Offenses

 A person commits aggravated kidnapping by intentionally or knowingly abducting another with the intent to
inflict bodily injury on that person. Tex. Pen. Code Ann. § 20.04(a)(4) (Vernon 2003). Abduction is a
continuous and ongoing event, for which there is no time limit. Weaver v. State, 657 S.W.2d 148, 150 (Tex.
Crim. App. 1983) (citingSanders v. State, 605 S.W.2d 612, 614 (Tex. Civ. App. 1980)).

 The penal code section that defines capital murder directs readers to the code section regarding murder. Tex.
Pen. Code Ann. §19.03 (Vernon 2003). That section provides, "A person commits [murder] if he . . .
intentionally or knowingly causes the death of an individual." Id. § 19.02(b)(1). The capital murder section
completes the definition of capital murder by adding, "and . . . the person intentionally commits murder in the
course of committing . . . kidnapping." Id. § 19.03(a)(2).

III. Analysis

A. Territorial Jurisdiction


 By his first point of error, appellant contends the State lacks jurisdiction to charge him with capital murder. 
We agree.

 Section 1.04 of the penal code provides, "This state has jurisdiction over an offense that a person commits . . .
if either the conduct or a result that is an element of the offense occurs inside this state." Tex. Pen. Code Ann.
§ 1.04(a)(1) (Vernon 2003). This Court has considered section 1.04 and determined that it gives the State of
Texas jurisdiction over an offense if the offense or an element of the offense is committed within the state. 
See Salazar v. State, 711 S.W.2d 720, 724 (Tex. App.-Corpus Christi 1986, pet. ref'd).

 Here, there is no evidence that either the offense of murder or any of its elements were committed in Texas. 
Not only did the torture and strangling (conduct), which caused the death, take place in Mexico, but the body
(result) was found in Mexico, too. In other words, neither "the conduct or a result that is an element of
[murder] occur[red] inside this state." Tex. Pen. Code Ann. § 1.04(a)(1) (Vernon 2003).

 Because the penal code's capital murder provision explicitly directs us to its murder provision, we hold that
the offense of murder or an element of murder (either the conduct or a result) must be committed within this
state in order for Texas to have jurisdiction over the offense of capital murder.

 Consequently, the State did not have jurisdiction over the offense of capital murder. Had an element, either
the conduct or a result, of the offense of murder occurred in this state, then Texas would have jurisdiction
over the offense of capital murder. However, that is not the case here. Appellant's first point of error is
sustained. The remainder of the analysis will focus on the aggravated kidnapping conviction.

B. Accomplice Corroboration

 By his third point of error, appellant contends the State failed to corroborate the testimony of accomplice
witnesses. We disagree.

 Article 38.14 of the code of criminal procedure provides, "[a] conviction cannot be had upon the testimony of
. . . accomplice[s] unless corroborated by other evidence tending to connect the defendant with the offense
committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex
Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). To determine whether the accomplices' testimony is
corroborated, we eliminate the accomplices' testimony and review the remaining evidence to determine
whether it tends to connect appellant to the offense. Munoz v. State, 853 S.W.2d 558, 559 (Tex. Crim. App.
1993) (emphasis added). The corroborative evidence need not directly link appellant to the crime or be
sufficient in itself to establish guilt. McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). The
corroborative evidence may only be circumstantial. Brown v. State, 672 S.W.2d 487, 488 (Tex. Crim. App.
1984).

 When the testimony of the accomplices is eliminated from our consideration, the non-accomplice testimony
outlined earlier demonstrates: (1) appellant was at the scene of the crime the day before asking about a car for
sale in front of the store; (2) appellant had been seen driving a green Suburban shortly before the crime; (3)
Hector was kidnapped by men who asked about the car for sale in front of the store; (4) the kidnappers drove
a green Suburban with Mexican license plates; (5) a burned green Suburban with Mexican license plates was
found near Hector's store a few hours after the kidnapping; and (6) handcuffs were found with the burned
Suburban.

 This non-accomplice testimony tends to connect appellant to the offense. Munoz, 853 S.W.2d 559. As such,
the State did not fail to corroborate the accomplices' testimony. Appellant's third point of error is overruled.

C. Legal Sufficiency

 By his second point of error, appellant contends the trial court erred by denying his motion for directed
verdict because there is not legally sufficient evidence to prove aggravated kidnapping. We disagree.

 The basis of appellant's motion was the State's alleged failure to corroborate the accomplices' testimony and
otherwise provide sufficient evidence to prove aggravated kidnapping. Having concluded that the
accomplices' testimony was corroborated, we now examine appellant's challenge to the legal sufficiency of the
evidence as a whole.

 For a legal sufficiency challenge, we review the evidence in a light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 43 U.S. 307, 319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000); Rosillo v. State, 953 S.W.2d 808, 811 (Tex. App.-Corpus Christi 1997, pet. ref'd). As fact finder, the
jury is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony.
Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). The jury is free to accept one version of
the facts, reject another, or reject all or any of a witness's testimony. Penagraph v. State, 623 S.W.2d 341,
343 (Tex. Crim. App. 1981). Sufficiency of the evidence is measured by the hypothetically correct jury
charge, which accurately sets out the law, is authorized by the indictment, and does not unnecessarily increase
the State's burden of proof. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Cano v. State, 3
S.W.3d 99, 105 (Tex. App.-Corpus Christi 1999, pet. ref'd). In conducting this analysis, we may not re-weigh
the evidence and substitute our judgment for that of the jury. King v. State, 29 S.W.3d 556, 562 (Tex. Crim
App. 2000).

 At trial, the State called two accomplices to testify as to appellant's involvement in the kidnapping. The
testimony outlined earlier demonstrates that appellant was involved in: (1) the planning of the kidnapping in
McAllen; (2) the kidnapping itself; (3) transporting Hector to a house in Mexico; and (4) torturing him
there.

 After measuring the legal sufficiency, we conclude the evidence adduced from the accomplices and others
was sufficient to allow a jury to find the elements of aggravated kidnapping (intentional/knowing abduction,
intent to inflict bodily injury) beyond a reasonable doubt. We hold that the evidence is legally sufficient to
support appellant's conviction for aggravated kidnapping. The trial court did not err by denying appellant's
motion for directed verdict. Appellant's second point of error is overruled.

D. The Rule

 In his fourth point, appellant contends the trial court abused its discretion by exempting Texas Ranger Israel
Pacheco from rule of evidence 614. (1) We agree, but hold that the error is harmless.

 "The purpose of placing witnesses under the sequestration rule . . . is to prevent the testimony of one witness
from influencing the testimony of another." Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996). The
party seeking an exception under rule 614 has the burden of showing that one of the enumerated sections is
met. Bath v. State, 951 S.W.2d 11, 23 (Tex. App.-Corpus Christi 1997, pet. ref'd). If the prosecution claims
that the witness's presence is essential to the presentation of its cause (a section three exception), as is the
situation here, a "showing" is required. Id. (quoting Barnhill v. State, 779 S.W.2d 890, 892-93 (Tex.
App.-Corpus Christi 1989, no pet.)). "[A] conclusory explanation does not constitute the showing
contemplated by [rule 614]." Hernandez v. State, 791 S.W.2d 301, 306 (Tex. App.-Corpus Christi 1990, pet.
ref'd) (prosecutor's explanation that it would be "necessay and essential" for him to confer with requested
witness during testimony is conclusory); see Barnhill, 779 S.W.2d at 892 (prosecutor's explanation that
requested witness is a caseworker is not a showing). "It is within the trial court's discretion to decide if a
requested exemption from . . . rule [614] is justified." Aguilar v. State, 739 S.W.2d 357, 358-59 (Tex. Crim.
App. 1987); see Bell, 938 S.W.2d at 50.

 After the jury had been selected, but prior to the first witness, the State requested an exception to rule 614 for
Pacheco, so he could remain in the courtroom at counsel table to assist the State in presenting its case. In
support of the request, the State said:

 The evidence is going to show that federal agents from the DEA, the FBI, the McAllen police were involved,
the Texas Rangers were involved in this case. Now, this is a fairly complicated case, a very complicated case,
and for that reason we are requesting that you allow a witness to remain in the courtroom throughout the trial
and his name being Israel Pacheco. He is from the Texas Rangers.



The defense objected and stated:

 [Pacheco] is a very exculpatory witness to the Defense. To allow him to stay in the courtroom would . . .
provide the State with the opportunity to educate Mr. Pacheco as to how we are going to proceed with our
defense. They have invoked the rule and we will stand by it. . . . [Furthermore, Pacheco] is not the case agent.



The State responded by explaining that, "[Pacheco] brought the case to the District Attorney's office and
conferred with the District Attorney's Office." The trial court then decided to allow the exception for
Pacheco.

 At that point, the trial court erred because the State's explanation was conclusory. The State merely informed
the court that Pacheco was a Texas Ranger who brought the case to the prosecution and discussed it with
them, which does not meet their burden to show that the exception to rule 614 was warranted. See
Hernandez, 791 S.W.2d at 306; Barnhill, 779 S.W.2d at 892; see also Peters v. State, 997 S.W.2d 377, 385
(Tex. App.-Beaumont 1999, no pet.) ("The Rule contains no express exception for investigators."). Such an
explanation is not a showing and lies in contrast to our holding in Bath, where we concluded that the State
made a showing by explaining that: the witness in question "was involved with the investigation of [the] case
since the date of the offense," "he was the lead investigator for the prosecution," he "helped coordinate with
all law enforcement agencies," "he assisted the prosecution in preparing [the] case for trial," and "his
assistance and expertise would be needed with numerous items of evidence to be presented at trial." Bath,
951 S.W.2d at 23.

 After the first witness testified, the defense renewed its objection to the presence of Pacheco. The State then
responded:

 [We have already] represented to this Court that this case is a very complex case and that we needed Mr.
Pacheco in here to sort out all these details. There were hundreds of people that were interviewed in the
process of investigating this case. Certainly we don't want to bring all these witnesses in here. We are trying
to narrow it down to just the ones that are relevant to this case, and his presence is essential.



The trial court concluded, "The State has carried its burden. They have shown that this is a complex case so
[Pacheco] will be allowed to stay."

 Again, the trial court missed its opportunity to properly exclude Pacheco from the courtroom. The court
mischaracterized the burden of the party requesting an exception to rule 614 for an allegedly essential witness
by finding "that this is a complex case so [Pacheco] will be allowed to stay." When deciding whether to allow
an exception for a witness who is allegedly essential to the presentation of the requesting party's cause, the
court cannot be satisfied if the party shows that the case is complex. In such a situation, the court must
require the requesting party to show that the witness is essential. Bath, 951 S.W.2d at 23; Hernandez, 791
S.W.2d at 306; Barnhill, 779 S.W.2d at 892. Whether or not the case is complex makes no difference, unless
the party requesting the exception for the allegedly essential witness shows that the witness' necessity relates
to the case's complexity.

 In addition, while the State's new justification for the exception, that Pacheco was needed to sort out details,
was less conclusory than the earlier justification, it was conclusory nonetheless. See Peters, 997 S.W.2d at
385 (requesting party's explanation that an investigator is very knowledgeable of witnesses is not a showing). 
It is not clear to us that Pacheco's presence in the courtroom was necessary in order for him to sort out details. 
The State's vague explanation is not in line with the showing made in Bath, where the State specifically said its
witness's presence was essential because "his assistance and expertise would be needed with numerous items
of evidence to be presented." Bath, 951 S.W.2d at 23. Without a more explicit explanation, sorting out
details appears to be a task that can be performed before witnesses are called, making Pacheco's presence in
the courtroom unnecessary. In contrast, a witness, like the one exempted from rule 614 in Bath, whose
knowledge and help is necessary to present items of evidence is actually needed in the courtroom with the
evidence during other witnesses' testimony. Id. In this case, the State's entire support for their request
amounts to nothing more than a conclusory explanation.

 In essence, the trial court overruled the appellant's second objection to Pacheco's presence in the courtroom
without requiring a showing by the State. Because no showing was made, the trial court abused its discretion
by allowing the exception to rule 614 for Pacheco, as a witness whose presence was essential to the State's
presentation. Moore v. State, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994). We now examine whether the
error is reversible. Hernandez, 791 S.W.2d at 306; Barnhill, 779 S.W.2d at 893. "We need not reverse if we
determine that the error did not affect appellant's substantial rights." Ladd v. State, 3 S.W.3d 547, 566 (Tex.
Crim. App. 1999) (citing Tex. R. App. P. 44.2(b)). "In other words, we need not reverse if, after examining
the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to
appellant's detriment or had but a slight effect." Id.

 Two relevant criteria in assessing this type of error are: (1) did the exempted witness actually hear the
testimony of the other witnesses; and (2) did the exempted witness's testimony contradict the testimony of a
witness he actually heard from the opposing side or corroborate the testimony of another witness he actually
heard from the same side on an issue of fact bearing upon the issue of guilt or innocence. Guerra v. State, 771
S.W.2d 453, 475-76 (Tex. Crim. App. 1988); (2) see Ladd, 3 S.W.2d at 566.

 Since Pacheco was allowed to remain in the courtroom, the first criteria has been met, and we proceed to the
second. Because the defense called no witnesses, we will only examine whether or not Pacheco's testimony
corroborated the testimony of the witnesses he heard.

 In general, Pacheco's testimony explained the investigative process and his involvement in the investigation. 
Pacheco's testimony coincided with that of DEA agent Tony Dominguez and FBI agent Scott Sledd in that
each testified that, based on their knowledge, Hector was not in the federal witness protection program. 
Pacheco's testimony also coincided with Sledd's with respect to how Pacheco became involved in the
investigation. In addition, Pacheco's testimony coincided with accomplice Francisco Castaneda. When
describing the events leading to the crime, Castaneda said, "At [the] trailer park . . . Hugo picked up the
Suburban and we left in the Suburban." Later on in the trial, Pacheco testified that during the investigation
Castaneda took him to a trailer park and said, "This is the mobile home where we picked up the Suburban." 
Our review of the record reveals that, apart from these instances, Pacheco testified to matters not addressed
by the other witnesses. Barnhill, 779 S.W.2d at 893. Thus, we conclude that minor portions of Pacheco's
testimony meet the second criteria of Guerra. Id.

 "Nonetheless, we do not believe the error constitutes reversible error." Id. Pacheco's testimony concerned no
issue of fact bearing upon the issue of appellant's guilt and explained the investigative process. See Guerra,
771 S.W.2d at 475-76; Barnhill, 779 S.W.2d at 893. His testimony that duplicates other witnesses' testimony
could be characterized as background information that contains nothing to incriminate appellant. Barnhill, 779
S.W.2d at 893. While the trial court abused its discretion in exempting Pacheco from rule 614 without
requiring a showing by the State, we hold that there is no reversible error because of the harmless nature of
the evidence that was improperly introduced through Pacheco's testimony. Id. "On this record, we have fair
assurance that the trial court's error did not influence the jury's deliberations to appellant's detriment or had but
a slight effect." Ladd, 3 S.W.3d at 566. Appellant's fourth point of error is overruled.

E. Hearsay

 By his sixth point of error, appellant contends the trial court improperly allowed the State to introduce
hearsay testimony from Pacheco, resulting in reversible error. We disagree.

 Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial, offered in
evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). The admissibility of hearsay
evidence is a question for the trial court, reviewable under an abuse of discretion standard. See Coffin v.
State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994).

 Before the prosecution began its direct examination of Pacheco a hearing was held outside the presence of the
jury. Defense counsel objected on the basis that "anything [Pacheco] would have to offer . . . other than what
he actually did . . . would be hearsay." The trial court overruled the objection. Counsel then objected to the
introduction of Pacheco's report on the basis of hearsay, and the court sustained the objection. After the jury
was called, counsel objected when Pacheco was asked about specific statements made by other agents on the
case. (3) In response to these objections, the State explained the testimony was not being offered for proof of
the truth of the matter asserted. Rather, the State argued, the testimony was offered to give background
information and help the jury understand the investigation. The court agreed with the State and overruled
both objections.

 After reviewing the record, it appears neither statement was made in order to prove the truth of the matter
asserted. The purpose of Pacheco's answers was to explain the investigative procedures followed in this case. 
Whether or not Pacheco was actually called or advised by agents does not depend on the truth of what these
agents said. The testimony of which appellant objects does not meet the definition of hearsay. Tex. R. Evid.
801(d). The trial court did not abuse its discretion by overruling appellant's objections. Appellant's sixth point
of error is overruled.

 F. Custodial Interrogation

 In his fifth and seventh points, appellant contends his interview with investigators, before he was charged, was
a custodial interrogation. As a result of the alleged custodial interrogation, appellant argues that his privilege
against self-incrimination (4) and his due process rights (5) were violated. We disagree.

 The initial determination of custody depends on the objective circumstances of the interrogation, not on the
subjective views of the officer or the person being questioned. Stansbury v. California, 511 U.S. 318, 323
(1994). Here, Pacheco testified: (1) appellant was a suspect but was not under arrest at the interview; (2)
arrangements were made, at appellant's request, for him to make a phone call during the interview; (3) no
statement was taken during the interview; and (4) appellant left the interview freely and said he would call the
officers the next day about his decision to cooperate or not.

 In light of the above circumstances, we conclude the interview was not a custodial interrogation. Appellant's
fifth and seventh points of error cannot stand because his due process and self-incrimination arguments depend
upon a conclusion that the interview was a custodial interrogation. We overrule both points of error.

IV. Conclusion

 Because we have sustained appellant's first point of error, we reverse appellant's conviction for capital murder
and render an acquittal. The remaining points are all overruled. Appellant's conviction and sentence for
aggravated kidnapping will stand. We AFFIRM the judgment of the trial court in part and REVERSE AND
RENDER in part.




 LINDA REYNA YAÑEZ

 Justice









Do not publish. Tex. R. App. P. 47.2(b).



Opinion delivered and filed this the

14th day of August, 2003.

1. Rule of evidence 614 provides, "At the request of a party the court shall order witnesses excluded so that
they cannot hear the testimony of other witnesses." Tex. R. Evid. 614(3). However, the rule "does not
authorize exclusion of: a person whose presence is shown by a party to be essential to the presentation of the
party's cause." Id. Practitioners commonly use the phrase "invoking the rule" when they request that the trial
court exclude the witnesses during testimony.

2. We recognize Aguilar is more on point than Guerra, in that the former addresses how to review the trial
court's decision to allow an exception to rule 614, as is the case here, and the latter addresses how to review
the trial court's mistake of allowing a violation of rule 614 (i.e., when rule 614 is invoked without exception,
yet a witness remains in the courtroom afterwards and later testifies). Guerra v. State, 771 S.W.2d 453,
473-76 (Tex. Crim. App. 1988); Aguilar v. State, 739 S.W.2d 357, 357-60 (Tex. Crim. App. 1987). 
Nevertheless, we will apply the harm analysis set out in Guerra, because it updates the same harm analysis
used in Aguilar. Guerra, 771 S.W.2d at 474-75; Aguilar, 739 S.W.2d at 359-60. However, we will not
apply the additional two-step approach from Guerra to determine what kind of witness was involved, 771
S.W.2d at 476, as it is appropriate when analyzing harm resulting from the trial court's allowing a violation of
rule 614, not when analyzing a trial court's decision to allow an exception to rule 614.

3. The following answers followed appellant's respective objections:



 Pacheco: On July 24th of '97, Cumendante Oscar Alaniz had called me on the telephone saying he was trying
to get a hold of the FBI and he had information about the Suburban to give them. I went ahead and took the
information and called the FBI and gave them that information. . . . 



 On August 4th, '97, I received the results of an interview conducted by the FBI and also DEA Agent Tony
Dominguez and McAllen PD investigator Ralph Ramirez of one of the suspects, Victor Hugo Rojas, in
Reynosa.

4. After being taken into custody by law enforcement officers, a person must be warned that any statement
made may be used as evidence against the person. See Stansbury v. California, 511 U.S. 318, 323 (1994)
(citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)) (emphasis added).

5. Appellant alleges several violations of his due process rights under article 38.22 of the code of criminal
procedure. This article outlines when statements from accused persons may be used. Tex. Crim. Proc. Code
Ann. § 38.22 (Vernon 1979 and Supp. 2003). The article requires warning to be given and tape recording
made prior to taking a defendant's statement. Tex. Code Crim. Proc. Ann. § 38.22(2-3) (Vernon 1979 and
Supp. 2003). However, it only applies to statements obtained as result of custodial interrogation. Rathmell v.
State, 653 S.W.2d 498, 501 (Tex. App.-Corpus Christi 1983, pet. ref'd) (emphasis added).