OPINION

No. 04-04-00362-CR

Ivey BURKETT,
Appellant

v.

The STATE of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2003-CR-5791
Honorable Mark Luitjen, Judge Presiding
 
Opinion by:    Catherine Stone, Justice
 
Sitting:            Catherine Stone, Justice
Sarah B. Duncan, Justice (concurring in the judgment only)
Sandee Bryan Marion, Justice
 
Delivered and Filed:   June 15, 2005

AFFIRMED.
            Appellant, Ivey Burkett, was convicted of driving while intoxicated and assessed a ten year
sentence and a $1000 fine. Burkett raises eight issues on appeal. We have reviewed all claims of
error and conclude that no harmful error occurred. Accordingly, we affirm the trial court’s judgment.
 
 
Background
            On June 1, 2003, at approximately 11:00 p.m., Santiago Reyes was driving on an access road
in Bexar County, Texas, when he stopped at a red light. Reyes heard the sound of screeching brakes
and within seconds, the right side of his stopped vehicle was sideswiped by a vehicle driven by the
appellant, Ivey Burkett.
            Reyes turned and saw Burkett pull into a parking lot. Reyes followed, and the men exited
their vehicles to exchange insurance information. Burkett admitted he was at fault in the accident.
According to Reyes, Burkett seemed sluggish, tired, and “kind of intoxicated.” Burkett leaned
against his vehicle for support and spoke with slow speech. Reyes testified he had to listen very
carefully to understand what Burkett was saying. 
            Officer John Yarborough was the first police officer to arrive at the scene of the accident.
According to Yarborough, Burkett smelled of alcohol, his speech was slurred, and he was having
difficulty keeping his balance. Yarborough suspected Burkett was intoxicated, so he called for
assistance because he is not trained to administer field sobriety tests. In his police report,
Yarborough noted Burkett was unemployed due to disability. Yarborough concluded the accident
had been caused by Burkett’s failure to control the speed of his vehicle, alcohol consumption, and
driver inattention. When asked by defense counsel why Yarborough did not write in his report the
accident was caused by Burkett’s intoxication, Yarborough stated he had not formed any conclusion
about Burkett’s intoxication because he is not trained to administer field sobriety tests. Yarborough
made these notations in his report before he was aware of Burkett’s performance on the field sobriety
tests.
            Officer Michael Starnes responded to Yarborough’s call for assistance and arrived at the
scene of the accident within five minutes. Yarborough informed Starnes he suspected Burkett was
intoxicated. Starnes made contact with Burkett and asked him to perform field sobriety tests. While
explaining the tests to Burkett, Starnes noticed that Burkett was unsteady on his feet and had a strong
smell of intoxicants on his breath, slurred speech, and bloodshot eyes. Burkett did not inform
Starnes he suffered from any medical conditions that would preclude him from performing the field
sobriety tests. Burkett stated he was not wearing contact lens, and verified he had not suffered any
head injuries in the car accident.
            In a smoothly paved, well-lit parking lot, Starnes administered three standardized field
sobriety tests to Burkett: the horizontal gaze nystagmus (HGN) test; the walk and turn test; and the
one leg stand test. Burkett exhibited all six clues on the HGN test, indicating he was alcohol-impaired. Starnes then administered the vertical gaze nystagmus (VGN) test to determine if Burkett
had been drinking excessively. Burkett did not exhibit vertical nystagmus. Starnes explained to the
jury that the VGN test does not establish whether someone is intoxicated, but it can establish whether
a person has consumed an excessive amount of alcohol. 
            Burkett next failed the walk and turn test, exhibiting six out of eight possible clues. Starnes
concluded Burkett failed the test because he was unable to follow the instructions, could not keep
his balance during the instruction period, did not touch his heel to toe, had to raise his arms for
balance, turned to the wrong side, completed only eight of the nine steps walking forward, and
completed only three of the nine steps walking back.
            Lastly, Burkett failed the one leg stand test, exhibiting several clues: he used his arms for
balance; swayed back and forth; and had to put his foot down four times. Based on his observations
and Burkett’s poor performance on the field sobriety tests, Starnes concluded Burkett was
intoxicated and had lost the normal use of his mental and physical faculties. Starnes handcuffed
Burkett and called for an officer to process Burkett for DWI.
            Officer Rodney Olivarez, who was dispatched to the scene of the accident to take Burkett into
custody, testified that Burkett had bloodshot eyes, slurred speech, and a strong smell of intoxicants
on his breath. Olivarez noted in his police report Burkett had a visible injury, but did not indicate
the specific injury, and could not remember at trial. Before taking Burkett into custody, Olivarez
administered the HGN field sobriety test to Burkett and observed six clues.
            At the magistrate’s office, Burkett refused to take the intoxilyzer test and also refused to give
a blood sample. Because Burkett refused to take the intoxilyzer test, Olivarez took him into a room
where Burkett could be videotaped. Burkett stated he had a bad knee. When Burkett was asked to
perform field sobriety tests on video, he refused.
            Burkett’s defense at trial was disability. The defense put on two witnesses to testify about
Burkett’s physical and mental health conditions: Dr. Delia Bullock, and James Burkett, the
appellant’s brother.
            Dr. Bullock, who began treating Burkett for AIDS in 1999, testified extensively about his
medical condition. Burkett has had a severe infection in his cervical vertebrae and underwent
surgery to fuse the vertebrae in his neck. As a result of the surgery, Burkett has difficulty turning
his head from side to side and tipping his head back. Burkett suffers from age-related degenerative
joint disease and osteoarthritis in his lower back. This has left him with chronic back pain and
causes him to have difficulty ambulating. Burkett has pulmonary problems and abnormal lungs, so
he does not have good exercise tolerance. 
            Burkett also suffers from abnormal liver functions due in part to Hepatitis C, a liver disease.
After her initial visit with Burkett, Dr. Bullock warned him he needed to stop consuming alcohol,
and his liver function has improved. Despite the improvement in his liver function, Dr. Bullock
could not verify whether Burkett has discontinued consuming alcohol, or whether he consumed
alcohol the night in question. Burkett also suffered a pelvic fracture prior to 2003, an infection in
one of his heart valves, an illness called “empyema” (a collection of fluid around the lung), and
cerebral atrophy. Dr. Bullock testified that many of Burkett’s conditions are chronic.
            Dr. Bullock also testified that Burkett is odd in his behavior and demeanor. She stated that
he is difficult to understand because he does not have any teeth and speaks with slurred speech.
Burkett also walks with an unsteady gait–according to Dr. Bullock, “you’re almost fearful he’s going
to fall over.” Due to Burkett’s peculiar demeanor, Dr. Bullock suspected he was intoxicated on a
few occasions and ordered alcohol studies on him, which came back negative. Dr. Bullock observed
the police videotape of Burkett and stated that is how he speaks and ambulates when she has seen
him for his check-ups. In her opinion, the videotape did not indicate Burkett had lost the normal use
of his mental and physical faculties. Dr. Bullock admitted that had she known Burkett caused a car
accident, appeared intoxicated to police officers, and refused to take an intoxilyzer test, her opinion
about Burkett’s impairment due to alcohol consumption could change. Dr. Bullock testified that if
Burkett consumed alcohol, he would be even more impaired than he is normally.
            Dr. Bullock also testified that a person with Burkett’s medical conditions can develop red,
glassy eyes, but to her knowledge, Burkett has never suffered from that eye condition. She also
stated that the physical conditions Burkett suffers from would not have caused him to have an odor
of intoxicants on his breath, and verified the HGN field sobriety test is a reliable indicator of whether
someone is intoxicated.
            Burkett’s brother James testified that Burkett has the AIDS virus, does not have any teeth,
lives with one lung, and suffers from heart problems. While they were growing up, James noticed
Burkett suffered from “severe abnormalities” mentally. According to James, Burkett saw a specialist
when he was 12 or 13 for his mental illness and received thirty shock treatments. James estimates
Burkett has suffered from his medical conditions for over a decade. James watched the videotape
of Burkett that was taken the evening of his arrest, and testified the manner in which Burkett spoke
and ambulated were normal.
            The jury found Burkett guilty of the charged offense, and also found both enhancement
paragraphs true. During the punishment phase of the trial, the jury heard testimony that Burkett
received prior convictions for assault with intent to rape in 1973, for DWI in 1994 and 1995, and for
possession of cocaine in 1995. There was also testimony that Burkett damaged his mother’s home
in August 2001; abused drugs and alcohol in his mother’s home in September 2001; admitted in
October 2001 to being a cocaine user for twelve years with occasional marijuana use; was taken to
the hospital in May 2003 for alcohol and cocaine intoxication and violent behavior; and was
admitted to the hospital on June 3, 2003 (two days after his arrest for DWI in the instant case) for
cocaine-induced hallucinations. The jury sentenced Burkett to ten years imprisonment and assessed
a $1000 fine.

Factual Sufficiency
            In his first issue, Burkett contends the evidence presented at trial is factually insufficient to
support his conviction for DWI.
            In a factual sufficiency review, we view all of the evidence in a neutral light and will set the
verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust,
or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not
have been met. Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004), cert. denied, 125
S. Ct. 1697 (2005) (citing Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004)). The
question under a factual sufficiency challenge is whether, considering all of the evidence in a neutral
light, a jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga, 144 S.W.3d
at 484. Evidence can be factually insufficient if the evidence is too weak to support the finding of
guilt beyond a reasonable doubt, or contrary evidence exists that is strong enough that the beyond-a-reasonable doubt standard could not be met, so the verdict should not stand. Id. at 485.
            In performing a factual sufficiency review, we are to give deference to the fact-finder’s
determinations, including determinations involving the credibility and demeanor of witnesses. Id.
at 481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). We may not substitute our
judgment for that of the fact finder’s. Zuniga, 144 S.W.3d at 482. We will not set aside the
judgment unless the evidence supporting the verdict is so weak as to be clearly wrong and manifestly
unjust. Id. at 481. A clearly wrong and manifestly unjust verdict occurs where the jury’s finding
“shocks the conscience” or “clearly demonstrates bias.” Id.
            To support Burkett’s conviction for felony DWI, the State was required to prove that Burkett
operated a motor vehicle in a public place while intoxicated and that Burkett had two prior
convictions for DWI. Tex. Pen. Code Ann. §§ 49.04(a) & 49.09(b)(2) (Vernon 2003 & Supp.
2004-05). Burkett does not contest the sufficiency of the evidence supporting his two prior DWI
convictions. The only element of the offense he contests is intoxication. Under the Penal Code,
intoxication may be proven when the evidence shows that the defendant has lost the normal use of
his mental or physical faculties by reason of alcohol consumption. Tex. Pen. Code Ann. §
49.01(2)(A) (Vernon 2003) (emphasis added).
            In conducting a factual sufficiency review, an appellate court must consider the evidence that,
according to the appellant, most undermines the jury’s verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003). At trial, Dr. Bullock testified that Burkett suffers from medical
impairments that give the appearance of intoxication. Dr. Bullock testified that Burkett normally
has slurred speech and an unsteady gait, which could provide an innocent explanation for the
eyewitness testimony that Burkett exhibited those symptoms of intoxication. The jury heard
testimony that Dr. Bullock thought Burkett was intoxicated during some of his hospital visits, during
which his blood alcohol tests came back negative. Dr. Bullock and James both viewed the police
videotape of Burkett and testified that Burkett did not appear differently in the video than he does
when he is not intoxicated.
            The first officer who observed Burkett in the field, Officer Yarborough, stated he could not
determine if Burkett’s symptoms of intoxication were due to intoxication or disability. Officer
Olivarez also noted on his police report that he observed a visible injury on Burkett after the
accident. The officers admitted in court that having back problems and disabilities can, in some
cases, cause a defendant to perform poorly on field sobriety tests.
            There was considerable evidence supporting intoxication, however. Although Dr. Bullock
testified that Burkett did not appear more impaired than usual in the police video, she also indicated
Burkett, because of his disabilities, is more susceptible to impairment when he has consumed
alcohol. Three police officers smelled a strong odor of alcohol on Burkett’s breath, and none of
Burkett’s physical impairments can cause him to smell like alcohol. Although Burkett’s physical
impairments may explain why he performed poorly on two of the field sobriety tests, he was unable
to follow simple instructions, indicating a degree of mental impairment. Burkett also exhibited six
clues on the HGN test, which has been recognized as a reliable indicator of intoxication. See
Emerson v. State, 880 S.W.2d 759, 768 (Tex. Crim. App. 1994), cert. denied, 513 U.S. 931 (1994).
Burkett verified he had not suffered any head injuries that could affect the reliability of the HGN test,
and none of his physical impairments would have affected its accuracy. When the HGN test was
conducted a second time by Officer Olivarez, Burkett again exhibited all six clues.
            Burkett also refused to provide the police a specimen of his breath or a sample of his blood
to determine his blood alcohol content (BAC). Burkett’s refusal to take the intoxilyzer test implies
he believed he would fail it because he thought he was intoxicated, and from such refusal, the jury
may infer guilt. See Tex. Transp. Code Ann. § 724.061 (Vernon 1999) (“A person’s refusal of a
request by an officer to submit to taking of a specimen of breath or blood...may be introduced into
evidence at the person’s trial); Gaddis v. State, 753 S.W.2d 396, 399 (Tex. Crim. App. 1988) (the
jury may infer guilt from a defendant’s refusal to take a breath test).
            Viewing all of the evidence in a neutral light, we hold that the evidence is not so weak that
the verdict is clearly wrong and manifestly unjust, or that Burkett’s contrary evidence is so strong
that the beyond-a-reasonable doubt standard could not have been met. See Escamilla, 143 S.W.3d
at 817. Burkett’s first issue is overruled.
Medical Excuse Instruction & “Reasonably Sober Driver” Standard
            In his second and third issues, Burkett contends the trial court erred in denying his request
for a medical excuse instruction, and a disabled individual should not be compared to a “reasonable,
non-intoxicated” individual when disability has been raised by medical testimony. Burkett contends
the jury was misled about the law and he was unable to argue medical disability in his closing
argument and present a medical disability defense.
            Burkett argues that the trial court erred in denying his medical excuse instruction. Prior to
the reading of the jury charge, defense counsel orally proposed the following jury instruction:
DEFENSE: Well, I propose and I would like this into the record and propose
this–that it be–that it be added. That if the Defendant was–suffered from
degenerative disk disease–lumbar cervical disorder, Hepatitis C, severe dentitis, HIV
positive, at the time–cerebral atrophy–at the time and place in question, rather than
being under the influence of alcohol, he would be not guilty of the offense charged
even if he was driving a motor vehicle.
Therefore, if you find from the evidence that on the occasion in question, and at the
time of the Defendant’s arrest he was suffering from degenerative disk disease,
lumbar cervical disorder, Hepatitis C, severe dentitis and cerebral atrophy, or if you
have a reasonable doubt thereof, you will acquit the Defendant.
COURT: Denied.
In Giesberg v. State, the Texas Court of Criminal Appeals held that any defensive theory not
recognized or specifically labeled as either a defense or an affirmative defense by the Legislature
does not warrant a separate instruction. 984 S.W.2d 245, 250 (Tex. Crim. App. 1998), cert. denied,
525 U.S. 1147 (1999). Burkett’s medical excuse instruction is not a statutorily-enumerated defense,



and merely serves to negate the impairment element of the State’s case. Therefore, the trial court
properly denied Burkett’s requested instruction. See Ortiz v. State, 93 S.W.3d 79, 92 (Tex. Crim.
App. 2002), cert. denied, 583 U.S. 998 (2003) (“[A] defensive instruction is not required when the
issue in question is not a statutorily-enumerated defense and merely serves to negate elements of the
State’s case”); Giesberg, 984 S.W.2d at 250. The trial court did not err in refusing Burkett’s
proposed instruction. We overrule Burkett’s third issue.
            In his second issue, Burkett argues that it is per se unreasonable to use an objective standard
for intoxication when the defendant in a DWI case is disabled. Burkett contends the trial court erred
by permitting the State to compare him to a “reasonably sober driver,” arguing that it is not a
“reasonable person” listed in the indictment. Rather, the individual in the indictment is the particular
defendant and his specific normal use of faculties. This argument was rejected in Massie v. State,
however:
We do not construe an allegation that appellant did not have normal use of his mental
and physical faculties the same as an allegation that appellant did not have his normal
use of his faculties. The former allegation does not require proof of the defendant’s
normal abilities. Rather, it means that the faculties which must be tested belong to
the appellant. If there was evidence that appellant could not use his faculties on the
occasion in question, in the manner in which the normal non-intoxicated person
would be able to use his faculties, the evidence is sufficient to convict him unless the
jury finds that his inability to perform on that occasion is not due to intoxicants (e.g.
diabetes, epilepsy).

744 S.W.2d 314, 316 (Tex. App.–Dallas 1988, writ ref’d) (emphasis in original). Several courts of
appeals have since adopted this holding. See, e.g., Railsback v. State, 95 S.W.3d 473, 484 (Tex.
App.–Houston [1st Dist.] 2002, pet. ref’d) (holding that the State does not have to establish what the
defendant’s normal use of his faculties is in order to prove that he did not have normal use of his
mental and physical faculties); Fogle v. State, 988 S.W.2d 891, 894 (Tex. App.–Fort Worth 1999,
pet. ref’d) (same); Reagan v. State, 968 S.W.2d 571, 572 (Tex. App.–Texarkana 1998, pet. ref’d)
(same).
            In further support of his argument, Burkett cites our opinion in Hernandez v. State, in which
we held:
A defendant cannot be found to be intoxicated if he lacks the normal use of mental
or physical faculties for a different reason, such as disability, illness, fatigue, stress,
or clumsiness.
107 S.W.3d 41, 51 (Tex. App. – San Antonio 2003, pet. ref’d) (citing Massie, 744 S.W.2d at 316). 
Our ruling in Hernandez does not support Burkett’s claim that an objective standard for intoxication
is inappropriate for a disabled DWI defendant. To the contrary, as this court noted in Hernandez,
the objective standard “is a correct statement of the law because it requires the jury to consider why
the defendant does not have the normal use of faculties.” Id. In Hernandez, as in the instant case,
the jury heard testimony that the DWI defendant had trouble walking and keeping his balance even
when he was not intoxicated, and thus appeared intoxicated even when he was sober. Id. We
rejected the defendant’s argument that the objective standard unreasonably compared him to a
reasonable, non-intoxicated person, holding:
[E]ven applying the objective standard, an individual can be found intoxicated only 
if he lacked the normal use of faculties by reason of the introduction of a substance
into his body. The subjective standard, by comparison, places an unnecessary burden
on the State to present evidence of the defendant’s own non-intoxicated faculties.

Id. (Emphasis added).
            In this case, we hold that it was not per se unreasonable to use an objective standard for
intoxication. We do not agree that Burkett was unable to present a defense.


 The jury heard
testimony that Burkett failed three field sobriety tests that a reasonable, non-intoxicated person
would have passed. Burkett presented evidence that his poor performance on the field sobriety tests
could have been due a reason other than intoxication, i.e. his disabilities. Dr. Bullock discussed
Burkett’s physical impairments and how they would prevent him from adequately performing field
sobriety tests that reasonable sober individuals can pass. The jury sifted through the testimony,
weighed the evidence, and apparently concluded Burkett lost the use of his faculties due to
intoxication. The jury’s conclusion that intoxication rather than disability caused Burkett to lose the
use of his faculties is supported by evidence that Burkett smelled strongly of intoxicants; failed the
HGN field sobriety test each time it was administered; could not follow instructions; and refused to
take the intoxilyzer test, give a breath sample, or perform field sobriety tests on video. We overrule
Burkett’s third issue.
Improper Jury Argument
            In his fourth issue, Burkett contends the trial court erred in overruling the following objection
to the State’s argument during closing argument:
STATE: Look at the totality of everything you heard and saw and the credibility of
the witnesses versus this–this man, this leech on society.
 
DEFENSE: Objection; improper argument.
COURT: Overruled.
Burkett contends this argument of the State is harmful and requests a new trial.
            The general areas of proper jury argument are summation of the evidence, reasonable
deduction from the evidence, answer to the argument of opposing counsel, and plea for law
enforcement. McFarland v. State, 845 S.W.2d 824, 844 (Tex. Crim. App. 1992), overruled on other
grounds by Bingham v. State, 915 S.W.2d 9, 14 (Tex. Crim. App. 1994). If the argument exceeds
permissible bounds, no reversible error occurs unless the argument affects the accused’s substantial
rights. Tex. R. App. P. 44.2(b); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998), cert.
denied, 526 U.S. 1070 (1999). To determine if the State’s improper argument affected Burkett’s
substantial rights, we look to three factors: 1) the severity of the misconduct; 2) measures adopted
to cure the misconduct; and 3) the certainty of the conviction absent the misconduct. Mosley, 983
S.W.2d at 259. 
            We do not condone the State’s comment, and the objection to the comment should have been
sustained. We are constrained to note, however, that calling Burkett a “leech on society,” though
reprehensible, is similar to other improper jury arguments that have been held harmless. See, e.g.,
Burns v. State, 556 S.W.2d 270, 285 (Tex. Crim. App. 1977), cert. denied, 434 U.S. 935 (1977)
(court held that the evidence justified the prosecutor’s comment that the defendant was an “animal”);
Hernandez v. State, 791 S.W.2d 301, 307 (Tex. App.–Corpus Christi 1990, pet. ref’d) (prosecutor’s
reference to defendant as “scum and goat” was improper, but not reversible); Norwood v. State, 737
S.W.2d 71, 74 (Tex. App.–Houston [14th Dist.] 1987, pet. ref’d) (prosecutor’s comment that
defendant was “animal” was error, but not reversible). The first factor of the harm test weighs in
Burkett’s favor. The second factor also weighs in Burkett’s favor because no curative action was
taken. Nevertheless, the third factor weighs heavier in the State’s favor. Absent the State’s
comment, it cannot be said that the outcome of the trial would have been different given the State’s
evidence of Burkett’s impairment due to alcohol consumption. Therefore, we conclude that
Burkett’s substantial rights were not affected by the State’s improper comment to the jury. We
overrule Burkett’s fourth issue.
 

Improper Jury Argument: Sentencing Phase
            In his fifth issue, Burkett contends the trial court erred in failing to instruct the jury to
disregard the State’s argument during closing arguments that “when a defendant goes to prison, he’s
going to receive all the free medical care he likes.” Burkett objected to the statement, and the court
sustained his objection because the State’s argument was outside the record. The court denied
Burkett’s instruction to disregard.
            The State argues the comment was a proper response to argument of defense counsel. We
disagree. Defense counsel mentioned during his argument that Burkett is disabled but never
discussed medical care. Therefore, we must decide whether Burkett was harmed by the improper
argument.
            Improper jury argument is non-constitutional error. Tex. R. App. P. 44.2(b); Mosley, 983
S.W.2d at 259. Rule 44.2(b) provides that a non-constitutional error “that does not affect substantial
rights must be disregarded.” Tex. R. App. P. 44.2(b). In determining whether the defendant’s
substantial rights have been affected, we balance the following factors: 1) the severity of the
misconduct (prejudicial effect); 2) curative measures; and 3) the certainty of the punishment assessed
absent the misconduct (likelihood of the same punishment being assessed). Hawkins v. State, 135
S.W.3d 72, 77 (Tex. Crim. App. 2004) (citing Martinez v. State, 17 S.W.3d 677, 693-694 (Tex.
Crim. App. 2000)) (setting forth the balancing test to be conducted when defendant complains of
improper jury argument in the punishment phase of a non-capital trial).
            The first factor concerns the severity of the misconduct and focuses on the prejudicial effect
of the comment. Id. at 78-79. Throughout its closing argument, the State discussed Burkett’s prior
felony convictions, volatile demeanor, and ongoing problems with substance abuse. The
complained-of comment was one sentence out of an argument that spanned four pages. The State’s
comment that Burkett would receive free medical care in prison is relatively mild. The second factor
requires little analysis because there was no curative instruction. We note that the State did nothing
to emphasize the comment made. This factor does not weigh heavily against the State. The third
factor, however, weighs heavily in the State’s favor. This was Burkett’s third conviction for DWI;
he had prior felony convictions for cocaine possession and assault with intent to rape; he was a
chronic substance abuser and exhibited volatile behavior at home. We can say with fair assurance
that absent the State’s comment, the jury would have assessed the same punishment, i.e. a ten-year
sentence and $1000 fine. Given the State’s brief comment and the evidence supporting the ten-year
sentence, we conclude the error was harmless. Burkett’s fifth issue is overruled.
Commitment Questions
            In his sixth and seventh issues, Burkett contends the trial court improperly permitted the State
to ask a commitment question during voir dire, and erred in sustaining the State’s objection to his
commitment question.
            The trial court has broad discretion over the process of selecting a jury. Barajas v. State, 93
S.W.3d 36, 38 (Tex. Crim. App. 2002). Therefore, appellate courts should not disturb a trial court’s
ruling on the propriety of a particular question during voir dire absent an abuse of discretion. Id. 
A trial court abuses its discretion if it prohibits a proper question regarding a juror’s views on an
issue applicable to the case. Howard v. State, 941 S.W.2d 102, 108 (Tex. Crim. App. 1996), cert.
denied, 535 U.S. 1065 (2002). Additionally, a trial court abuses its discretion if it allows a question
that attempts to commit the juror to a particular verdict based on a set of circumstances analogous
to the case in question. See Atkins v. State, 951 S.W.2d 787, 789 (Tex. Crim. App. 1997).
            In Standefer v. State, the Texas Court of Criminal Appeals articulated a specific test for
determining when a voir dire question calls for an improper commitment. 59 S.W.3d 177, 179-184
(Tex. Crim. App. 2001). First, trial courts must determine whether a particular question is a
commitment question. Id. at 179. A commitment question is a question that “commit[s] a
prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a
particular fact.” Id. If the court determines that a particular question is a commitment question, the
court must then decide whether the question gives rise to a valid challenge for cause. Id. at 181-82. 
If the question meets the challenge for cause requirement, the court must then determine whether the
question includes only those facts necessary to test whether a prospective juror is challengeable for
cause. Id.
            As summarized by the court in Standefer:
So, the inquiry for improper commitment questions has two steps: (1) Is the question
a commitment question, and (2) Does the question include facts—and only those
facts—that lead to a valid challenge for cause? If the answer to (1) is “yes” and the
answer to (2) is “no”, then the question is an improper commitment question, and the
trial court should not allow the question.
Id. at 182-83. We now review the questions at issue under these guidelines.
A. “One Witness” Question
            During voir dire, the State posed the following question to the jury:
If the State proves to you every element of driving while intoxicated, and you believe
that the State has met every element of the offense through the testimony of one
witness, beyond a reasonable doubt, could you convict the Defendant based on that
one witness’s testimony, or would you require more?

Defense counsel objected to the question as an improper commitment question, and the court
overruled the objection. The State proceeded to ask all the jurors the same question. Defense
counsel continued to object, but the trial court refused to rule on his subsequent objections.
            The State concedes that the question posed by the State constituted a commitment question. 
Therefore, we must determine whether the question led to a valid challenge for cause. The State may
challenge a juror for cause when the juror would hold the State to a higher standard than “beyond
a reasonable doubt.” Coleman v. State, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994), cert. denied,
513 U.S. 1096 (1995). Consequently, a prospective juror is properly subject to challenge for cause
if he indicates that he could not convict based on the testimony of one witness, even if he believed
that witness beyond a reasonable doubt. See Castillo v. State, 913 S.W.2d 529, 533 (Tex. Crim.
App. 1995). However, a prospective juror is not challengeable for cause merely by setting his or her
threshold for reasonable doubt higher than the minimum required by law, e.g., a prospective juror
who would require the testimony of more than one witness in order to be convinced beyond a
reasonable doubt. See id. 
            In this case, the State was entitled to inquire about whether a prospective juror could abide
by the standard of proof set by the law or if the juror would hold the State to a higher standard. See
id. at 533-35. A response indicating the juror would hold the State to a higher standard would
properly give rise to a valid challenge for cause. See id. at 533; Harris v. State, 122 S.W.3d 871, 881
(Tex. App.–Fort Worth 2003, pet. ref’d) (“How many people if selected on the jury could not find
somebody guilty based upon the testimony of just one witness, even if they believed that one witness
beyond a reasonable doubt?” was held to be a proper commitment question). Because the State’s
commitment question could lead to a valid challenge for cause, we proceed to the final step of
analysis under Standefer.
            Under Standefer, we must determine whether the State’s question included only necessary
facts. Here, the State’s question did not attempt to commit the prospective jurors in conjunction with
the specific facts of the case. The State’s question was not unnecessarily fact intensive, and included
only those facts necessary to determine whether a prospective juror was challengeable for cause. We
hold that the trial court did not abuse its discretion by allowing the State to ask the prospective jurors
whether they could convict based on the testimony of only one witness whom they believed beyond
a reasonable doubt. The State’s question was not designed to bind the prospective jurors to a
position based on a particular set of facts, but sought to elicit whether the prospective jurors could
impartially judge the credibility of a witness and follow the law. We overrule Burkett’s sixth issue.
B. “Guilt Based Solely on Arrest” Question
            In his seventh issue, Burkett contends the trial court abused its discretion in sustaining the
State’s objection to the following voir dire question posed by defense counsel:
If a person is arrested for DWI, how likely or unlikely is it that that person is guilty
of the charge of DWI? Would you say very likely, likely, somewhat likely, unlikely,
or very unlikely? The mere fact that he is arrested for DWI, how many of you would
say that if he is arrested for DWI, that it’s very likely that he’s guilty? Raise your
hand.

Burkett’s question meets the first Standefer prong: it is a question that requests the jurors to resolve
their verdict after learning a specific fact. The State contends Burkett’s commitment question fails
the second Standefer prong because not all answers to the question would give rise to a valid
challenge for cause. We disagree. “An open-ended question can be a commitment question only if
the question asks the prospective juror to set aside the hypothetical parameters for his decision-making.” Standefer, 59 S.W.3d at 180. For a commitment question to be proper, one, not all, of the
possible answers to the question must give rise to a valid challenge for cause. Id. at 182. If a juror
had answered the defense’s question affirmatively, the juror could be stricken for cause. See Tex.
Code Crim. Proc. Ann. art. 35.15 (Vernon 1989) (a venire person may be stricken for cause if he
or she has a preconceived notion of the defendant’s guilt or innocence). Accordingly, the question
is not impermissibly broad under Standefer.
            However, even assuming the trial court erred in sustaining the State’s objection, errors are
reversible only if they are harmful. See Tex. R. App. P. 44.2(b). An examination of the record
reveals that any error was harmless. At the beginning of voir dire, the trial judge told the jurors:
The Defendant is presumed innocent. He sits here today cloaked with the
presumption of innocence. Unless and until the State proves the essential elements
of the indictment by bringing forth competent evidence pursuant to the rules of
evidence here in a courtroom under oath, that presumption of innocence continues
to be maintained. So, if right now you were asked to vote whether or not the
Defendant is guilty or not guilty, what would your vote have to be?

All the prospective jurors stated their answer would be not guilty. Defense counsel informed the
prospective jurors that “[i]t is not against the law in the State of Texas to drink an alcoholic
beverage, and then get behind the wheel and drive home.” Defense counsel asked the prospective
jurors if any of them believed a person should not be allowed to drink an alcoholic beverage and then
get behind the wheel of a vehicle and drive. Defense counsel also discussed the burden of proof and
asked the prospective jurors if they would be able to follow the law: “Is anyone not going to hold the
State to their burden of proving the case beyond a reasonable doubt of all the elements in this case?”
The record reflects Burkett was able to intelligently exercise any challenges for cause. We overrule
Burkett’s seventh issue.
HGN Test Results
            In his eighth issue, Burkett argues the trial court erred in permitting the State to introduce
evidence “equating the Horizontal Gaze Nystagmus (HGN) test to intoxication”:
STATE: The six clues out of a possible total of six clues on the HGN, you testified
earlier that indicated to you that he was intoxicated?
 
WITNESS: Yes. That’s a very strong possibility. Not only that he’s intoxicated, but
that he’s intoxicated beyond the statutory limit.
 
DEFENSE: Objection, your Honor. That’s not proper. It goes beyond the scope of
the task, what it indicates, and it’s based on Erdman v. State, improper interpretation
of the HGN test.
 
COURT: Based on what?
 
DEFENSE: The case of Erdman v. State, that the HGN test just shows the presence
of alcohol. It doesn’t show – there’s no correlation to blood alcohol content.
 
STATE: I’m not asking the officer to quantify the percentage chance that the
Defendant was intoxicated based on the six clues that he observed. I’m simply asking
him whether that indicated to him whether he was intoxicated or not, and that’s what
he answered yes. I’m not asking him for an actual percentage number, which is what
he’s objecting to.
 
COURT: I didn’t hear him saying that.
 
DEFENSE: He was –if I may, he was starting to say –
 
COURT: What he said was –
 
DEFENSE: –he was past the–
COURT: –it would indicate he was intoxicated to the level he was not – did not have
the normal use of his mental and physical faculties.
 
DEFENSE: I think he was saying that it was past the statutory limit, is what he was
saying, and that’s not proper, form.
COURT: Let me hear – what were you saying? Not only –
 
WITNESS: In my training, we were trained that, um, when someone has six clues,
the likelihood of them being beyond the statutory limit was a certain percentage at -
 
DEFENSE: And I object, Judge.
 
COURT: Let him finish before we–
 
WITNESS: I cannot tell you at this point, quote, what the percentage chance is. I was
basically just quoting the training I had received.
 
COURT: The training shows it’s more likely than not, is that what you’re saying?
 
WITNESS: Yes, sir.
 
COURT: Objection is overruled.

            The State argues that Burkett waived this issue because defense counsel injected similar
testimony during cross-examination when he commented in front of the jury that the HGN test is
seventy-five percent accurate. We disagree. There is a distinction between the comment made by
defense counsel and the State’s expert’s comments. Defense counsel was referencing the reliability
of the HGN test itself; his statement was not an attempt to correlate Burkett’s HGN test results to
a specific BAC. Thus, we do not find waiver.
            We review the trial court’s decision to admit or exclude evidence under an abuse of
discretion standard. Montgomery v. State, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We
will not reverse a trial court’s ruling if it is within the “zone of reasonable disagreement.” Id. at 391.
            In Emerson, the Court of Criminal Appeals stated that an officer qualified as an expert on
the administration and technique of the horizontal gaze nystagmus test can testify concerning a
defendant’s performance on the HGN test, but may not correlate the defendant’s performance on the
test to a precise BAC. Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994), cert. denied,
513 U.S. 931 (1994). An officer trained to administer the standardized sobriety tests may opine that
a defendant was under the influence of alcohol, but he or she may not opine about that defendant’s
specific BAC. Id.
            On appeal, Burkett does not dispute the reliability or the application of the HGN test, but
contends the State exceeded the proper scope of testimony concerning the result of the HGN test
when Officer Starnes testified that the presence of six clues indicated Burkett was intoxicated beyond
the legal limit. Under the guidelines of Emerson, this was an impermissible attempt to estimate
Burkett’s blood alcohol level, and the trial court erred in admitting the evidence. Emerson, 880
S.W.2d at 769; Webster v. State, 26 S.W.3d 717, 723 (Tex. App.–Waco 2000, pet. ref’d) (the
prosecutor’s attempt to ask the witness to correlate Webster’s performance on the HGN test to
conclusion that Webster’s BAC exceeded the legal limit was held to be an impermissible attempt
to estimate Webster’s BAC on the basis of HGN test results).
            Since the alleged error in this case is not constitutional, we may not reverse the trial court’s
judgment unless the error affected the defendant’s substantial rights. See Tex. R. App. P. 44.2(b).
A substantial right is affected when the error had a substantial and injurious effect or influence in
determining the jury’s verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing
Kotteakos v. U.S., 328 U.S. 750, 766 (1946)).
            The evidence in this case did not affect Burkett’s substantial rights. The indictment does not
allege that Burkett was intoxicated by having a blood alcohol concentration in excess of 0.08; the
indictment alleges that Burkett was intoxicated because he lost the normal use of his mental and
physical faculties due to alcohol consumption. Throughout its case, the State argued Burkett lost the
normal use of his faculties and never referenced his potential BAC. Additionally, the State’s
evidence supported its impairment theory argument. In addition to Starnes’ testimony on the result
of the HGN test, the jury heard the testimony that Burkett smelled strongly of alcohol, could not
follow instructions, refused to take the intoxilyzer test, and refused to perform the field sobriety tests
on video. Since there was other evidence of Burkett’s intoxication, the evidence of the HGN test
did not have a substantial or injurious effect on the jury’s verdict. We overrule Burkett’s eighth issue.

Conclusion
            Having overruled each of Burkett’s appellate issues, the judgment of the trial court is
affirmed.
 
Catherine Stone, Justice

Publish